## GRIFFITH ET AL. *v.* SPROWL ET AL.

[No. 6,710.   Filed March 10, 1910.]

1.   CORPORATIONS.— *Capital   Stock.— Subscriptions.— Telephones.*— The statute (§5790 Burns 1908, §4182 R. S. 1881), providing for the incorporation of telephone companies, does not require that all, or any specific part, of the capital stock shall be subscribed for at the time of incorporation.  p. 509.

Griffith *v.* Sprowl—45 Ind. App. 504.

2. CORPORATIONS.—*Capital Stock.—Sale of.—Debts.—Telephones.—Directors.—Acts of.*—A telephone company with an authorized capital stock of $25,000, $15,000 of which has been issued, has the right to issue and sell the remainder of such authorized stock; and the act of a majority of the directors in selling a portion of the unissued stock is the act of the company.  p. 509.

3. CORPORATIONS.—*Acts of.—Directors.—Fraud.—Concealment of Purposes.*—The act of a majority of the directors in concealing their purpose from the others to do a lawful thing does not constitute fraud.  p. 510.

4. FRAUD.—*Presumptions of.*—There is no presumption of fraud in Indiana, but such fact must be alleged and proved.  p. 510.

5. CORPORATIONS.—*Officers.—Removal of.*—Where the by-laws of a corporation give the board of directors power to remove officers of the company, when required by the best interests of the company, in the absence of a finding that such removal was against such interest, the removal by the directors will be upheld, such directors having the power to determine what were the best interests of the company.  p. 510.

6. CORPORATIONS.—*Acts of.—Judicial Control of.—Fraud.—Illegality.*—In the absence of fraud or illegality, the courts have no power to determine the reasonableness of the acts of a voluntary association.  p. 510.

7. CORPORATIONS.—*Capital Stock.—Sale of, for Less than Value.—Special Findings.*—In a suit to enjoin the issuing of unissued shares of the authorized capital stock of a corporation, on the ground that such issue and sale were wholly unnecessary, and to set aside a certain sale made after the filing of the suit on the ground that the sale price was far below the value of the stock, a judgment for defendants will be upheld, there being no finding that defendants knew the value of the stock sold, or that they received any profit therefrom, or that any person would pay more than the amount received for such stock.  p. 510.

8. CORPORATIONS.—*Stockholders.—Duty of Majority Stockholder to Others.*—A stockholder who owns a majority of the stock in a corporation, occupies a fiduciary relation to the minority stockholders, and must exercise good faith, care and diligence in the control of the company's property.  p. 510.

9. TRIAL.—*Special Findings.—Failure of.—Fraud.*—A failure of the special findings to show fraud is fatal to a suit based upon alleged fraud.  p. 513.

From Grant Circuit Court; *H. J. Paulus*, Judge.

Suit by David H. Griffith and another against John S. Sprowl and others.  From a judgment for defendants, plaintiffs appeal.  *Affirmed.*

*W. A. Branyan, Abram Simmons* and *Frank C. Dailey,* for appellants.

*W. H. Eichhorn, E. V. Vaughn* and *U. S. Lesh,* for appellees.

COMSTOCK, J.—Appellants brought this suit in the Huntington Circuit Court to enjoin appellees from issuing certain stock not theretofore sold, and from removing one of appellants from the office of secretary and treasurer of appellee company and to require said corporation to give appellants an opportunity to purchase their portion of the unissued stock before offering the same for sale to strangers. Upon change of venue to the court below the cause was put at issue by a general denial. Upon proper request the court made a special finding of facts and stated conclusions of law thereon in favor of appellees, and, over appellants' motion for a new trial, judgment was rendered thereon.

The errors assigned are that the court erred in its conclusions of law, and in overruling appellants' motion for a new trial.

The special findings show substantially the following facts: Appellee corporation was organized March 10, 1904, with a capital stock of $25,000, divided into 250 shares, for the purpose of operating a telephone system in the counties of Huntington, Wells, Grant and Wabash, Indiana. The incorporators and the stock issued to each are as follows: Frank Canady, thirty shares; John P. Hacker, George W. Griffith, David H. Griffith and L. W. Pully, twenty shares each; John S. Sprowl, Henry E. Layman, J. C. Werly and George D. Kreigbaum, ten shares each; total one hundred fifty shares. David H. Griffith purchased the stock of John P. Hacker and J. C. Werly, and John L. Priddy purchased the stock of George D. Kreigbaum. All of said stock was fully paid at par. At the annual election held on March 14, 1905, all the holders of stock in said company were elected directors for the ensuing year, and on the same day said board of directors organized by electing proper officers, in-

cluding George W. Griffith as secretary and treasurer, and such officers were duly installed and conducted said business up to October 10, 1905. Said officers and directors were the only stockholders of said company. On October 10, 1905, at a regular meeting of the board, a resolution was offered and adopted authorizing the issue and sale of twenty-seven shares of the unissued stock, seventeen shares to be delivered to George S. Good and ten shares to Jonas Good, to be paid for on delivery at $100 per share, the proceeds of said sale to be used to pay off certain promissory notes against said company. David H. and George W. Griffith voted in the negative. Henry E. Layman was not present. At said session, by a majority vote, over the protest and objection of plaintiffs, Griffith and Griffith, defendants declared the offices of secretary and treasurer vacant, and elected defendant Pully to such offices. Defendants Sprowl, Canady, Pully and Priddy had arranged that such resolution should be offered, had agreed to support it, and had combined to conceal said arrangement from the plaintiffs, who, up to the time said resolution was offered, had no knowledge or information that any such purpose or intention was entertained by said defendants, and they then and there protested against such resolution and against making any sale of the so-called unused capital stock referred to in the resolution. Upon threats of defendants to issue said stock over their objections, plaintiffs, by proper proceedings, obtained a temporary injunction restraining such issue, which was set for hearing before the court on October 23, 1905. By amendment Jonas Good and George S. Good were made parties defendant. On November 10, 1905, upon hearing had, the court dissolved said restraining order.

Up to November 10, 1905, no stock was issued or subscribed for by defendants Good and Good, but on November 25, 1905, defendants Sprowl and Pully, claiming to be president and secretary of said company, and claiming authority under the before-mentioned resolution, issued twenty-seven shares of

stock to defendants Good and Good, who took it and paid therefor the par value, or $2,700. At the time said resolution was offered and at the time said stock was issued and sold to defendants, the Warren Telephone Company had no debts then due, and the current income of said company was then, and continued to be, amply sufficient to pay all expenses and all debts as they matured, and also to pay large dividends to its stockholders after all expenses and debts were paid. Defendants Good and Good never had any interest in any of the stock or property of defendant company until said twenty-seven shares of stock were issued to them. At the time said stock was issued and sold each share of stock in said corporation then unissued was of a cash value materially in excess of the face or par value thereof. The property of appellee company at that time had a cash value of $25,000, represented by $15,000 in stock issued. Defendant company's by-laws, in force March 14, 1905, provided that the president, vice-president, secretary and treasurer should hold office for one year and until their successors were elected and qualified, but that any officer elected by the board of directors might be removed by a majority vote of the entire board, whenever the interests of said company might require it, and these provisions of the by-laws continued in force thereafter. By the provisions of the same by-laws said officers were elected by the board of directors. At said meeting of the directors held on October 10, 1905, a resolution was presented and adopted by a majority of the board of directors declaring it to be to the best interests of the company for said Griffith to be removed from the office of secretary and treasurer, and declaring said office vacant. L. W. Pully was elected to said office and has assumed to act as secretary and treasurer of said company ever since. The money received from the sale of said twenty-seven shares of stock was used in the payment of the indebtedness of the company. After the issuing of said additional shares of stock, defendant com-

pany continued to pay dividends as before, which dividends were accepted by plaintiffs upon the shares of stock owned by them respectively. None of the plaintiffs at any time demanded that any of the unissued shares of capital stock in defendant company be issued to them, and did not at any time offer to take and pay for any of said shares at par or any other price, and did not at any time tender to defendant company any price for the shares of stock which were so issued and sold to defendants Good and Good, or any other portion of the unissued stock of defendant company, and there still remains unissued of the original authorized capital stock, seventy-three shares, of the par value of $7,300.

Appellants complain of the alleged wrongful sale of said twenty-seven shares of stock and the removal from office of the secretary and treasurer of said company. The law

1. relating to telephone companies provides that the stockholders who incorporate such association shall each sign such articles, giving his place of residence and the amount of stock subscribed by him. It does not require that all, or any specific part, of the stock be subscribed for at the time of incorporation (§5790 Burns 1908, §4182 R. S. 1881). There was $15,000 in stock subscribed at the time of the incorporation. Just prior to the commencement of this suit appellants jointly were the owners of stock of the par value of $8,000, and appellees Sprowl, Canady, Priddy and Pully were jointly the owners of $7,000 thereof. The company had been paying dividends on $15,000 issued stock and had been borrowing money. In October, 1905, it owed $2,600 borrowed money, which, however, was not due, but upon which the company was paying interest. The com-

2. pany undoubtedly had the right to issue the full amount of stock authorized by its charter. Four of the seven directors, at a meeting at which all directors except one were present, voted to issue and sell a portion of the unissued stock. The act of the majority of the board became the act of the corporation.

The fact that appellees agreed among themselves upon the course they would and did pursue, and concealed their purpose from appellants, would not be fraudulent if they had the right to do what they did. We may conjecture what their intentions were, but fraud is not presumed, and there is no finding of the ultimate fact of fraud. As shown, when the offices of secretary and treasurer were declared vacant there was in force a by-law providing that any officer might be removed by a majority vote of the entire board, whenever the best interest of said company might require it, and at said date, by a majority vote, the directors declared that the best interests of the company required the removal of said officer. It was for the directors to determine what were the best interests of the company. In the absence of a finding that such removal was against the interest of the company, it will be upheld. In the absence of fraud or illegality, courts have no power to pass upon the reasonableness of the acts of a voluntary association. *Green* v. *Felton* (1908), 42 Ind. App. 675, and cases cited. While the court found that the stock issued was worth materially more than par value, there is no finding that appellees knew such fact, nor that they profited by the sale. The money received was applied to the debts of the corporation. Nor is it found that appellants or any other person or persons offered, or were ready, willing and able, to buy said stock at par or at any other price.

Among the cases cited by counsel for appellants none are more favorable than the cases of *Elliott* v. *Baker* (1907), 194 Mass. 518, 80 N. E. 450, and *Wheeler* v. *Abilene Nat. Bank, etc., Co.* (1908), 159 Fed. 391, 89 C. C. A. 477, 16 L. R. A. (N. S.) 892. But they are not in conflict with this opinion. In the last-named case a single stockholder held the majority of the stock. He was its president, its creditor and one of its directors. The four other members of the board were qualified by his transfer of one share

of stock to each. After one of the holders of a minority of the stock had offered him $3,500 for the property of the corporation and had notified the secretary that he desired to bid for it, the property was sold to the owner of the majority of the stock for $2,500 (which was its fair value) by means of the regular action of the meeting of the directors and of the meeting of the stockholders, at which the purchaser's stock was voted for the sale. The court properly held that the devolution of unlimited power imposed upon the majority stockholder the duty of a fiduciary or agent to the holders of the minority of the stock, who can act only through him; that it was his duty to exercise good faith, care and diligence to make the corporate property produce the largest possible amount, and that any sale of the property of the corporation by him to himself for less than could be obtained from another is voidable at the election of the minority stockholders.

In the case of *Elliott* v. *Baker, supra,* the suit was by the stockholders of the Elliott Company in behalf of themselves and others to compel the return to the corporation and the cancelation of a certain certificate for 900 shares of stock. The material findings in the case were that there was a contest between two factions among its stockholders for the control of the Elliott Company, a Maine corporation, having its principal place of business in Boston. In April, 1904, plaintiff Elliott with his friends bought sufficient of the outstanding stock to give them control of the company. Nickerson, who was in Colorado, arranged with a majority of the board of directors, who were his friends, to issue, for $13 a share, to defendant Foster 900 shares of stock, owned by and held in the treasury of the company, which, if Foster voted with the Nickerson faction, would give it control of the corporation. The justice found that this was not issued in good faith, but to enable Nickerson and his friends to oust Elliott and his friends from the control, and give the control to Nickerson, etc.; that it was not necessary to issue the stock

to raise money, and that the price at which the stock was issued to defendant Foster was less than could have been obtained, in view of the peculiar conditions of affairs, if other stockholders and directors had been allowed to bid. It was further found that there was a secret understanding or arrangement between Foster and Nickerson as to the control of the corporation at the time the stock was issued, and that defendant Foster was in some way cognizant of the purpose for which the stock was issued and a party to it. It was further ruled that if the directors did not issue the stock in good faith and its issue was not required by the condition of the corporation or reasonably necessary for the proper prosecution of its business, but was issued to oust Elliott and his friends, and to give Nickerson and his friends control, and if Foster was cognizant of and a party to such purpose, then, even though the directors believed that it would be for the best interests of the corporation to have the control in the hands of Nickerson and his friends, their conduct would constitute a breach of trust, and the issuing of the stock would be in excess of their authority, and a certificate would be invalid in the hands of Foster, notwithstanding he paid what would have been, under ordinary circumstances, a fair price for the stock. The questions raised were whether the findings were plainly wrong upon the evidence, and as to the correctness of the rulings. The opinion goes on to say that it is peculiarly a case for the application of the rule that the judge who hears the witnesses has opportunities for testing their reliability and veracity which no appellate tribunal can acquire. In the one case fraud is found as a fact. In the other, a fiduciary relation is held to exist, and actual violation of a trust by the majority stockholder in selling to himself the property for which another party was willing to pay more. In this case there is no finding that the secret arrangement to sell the stock was made for the purpose of obtaining control of the corporation, nor is there a finding

that either of the acts complained of as wrongful or

9. fraudulent are facts. The absence of such findings is against appellants.

Other reasons in support of the judgment of the court are presented, but we do not deem it necessary to consider them.

Judgment affirmed.