## No. 10,237.

### TEMPLEMAN, ET AL. v. GRANT, ET AL.

Decided May 23, 1924.    Rehearing denied July 7, 1924.

Action for injunction. Decree for defendants.

### *Affirmed.*

1. CORPORATIONS—*Fraud—Evidence.* Evidence reviewed and held not to establish fraudulent intent or action on the part of corporate officers.

2. *Management—Directors.* The directors of a corporation have the right to determine the policy of the company and to manage its affairs in the exercise of honest judgment, if they act in good faith.

3. *Directors Meetings—Notice.* Where the by-laws of a corporation provided that the directors might waive notice of meetings, and they all assembled at a time and place named in the call without notice, and organized a meeting, it is held that this constituted a legal meeting of the board.

4. *By-Laws—Amendment.* The withdrawal of a minority of a board of directors from a directors meeting, held not to affect

the authority of the remaining majority to amend the by-laws increasing the number of directors and to fill vacancies created by the amendment.

5.       *Removal of Officers.*  Power to remove an officer for cause, inheres in every corporation, and this power, which is in the board of directors and not the courts, extends to all officers including the president.

6.       *Deposed Officers—Legal Proceedings.*  Officers of a corporation who have been legally removed from office, retain no power to institute legal proceedings in its name.

7.       *One Stockholder—No Officers—Effect.*  Where all the stock of a corporation is owned by another company, it becomes an inert corporation, and until there are other stockholders who elect the necessary officers, official corporate activity remains in complete suspension.

8.       *Officers.*  When all the stock of a corporation is transferred to another company, the directors and officers cease to hold office, the by-laws so providing.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Messrs. NORTHCUTT, FREEMAN & NORTHCUTT, for plaintiffs in error.

Messrs. BARTELS & BLOOD, Messrs. LEWIS & GRANT, Mr. ROBERT L. STEARNS, for defendants in error.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THIS is a stockholders' suit brought by Templeman and Frantz against the Templeman Oil Corporation of Delaware and the individual defendants, for an injunction to restrain the defendants from carrying into effect their alleged fraudulent designs to dissipate the assets of the corporation and from dismissing certain suits instituted by the plaintiffs in Oklahoma and Colorado, and also from ratifying the actions and proceedings of the board of di-

rectors of the defendant corporation, held on November 4, 1920.

The complaint charges that the defendants Kistler, Grant and Lockhart, as three of the five directors of the Templeman Oil Corporation, inaugurated a systematic opposition to the plaintiffs' efforts to collect certain obligations due the corporation, and in pursuance thereof they conspired to remove the plaintiffs from said management as president and vice president and to hand over the properties of the company to the control of the Producers and Refiners Corporation, a competing corporation, and to that end, conspired to call a meeting of the board of directors for November 1, 1920, and at the adjourned session, on November 4th, the defendants Kistler, Grant and Lockhart, for the purpose of aiding the scheme to prevent the collection of notes due the company from one Bosworth & Company, and to place the control of the properties in said competing corporation, of which Kistler was president and Lockhart a director, pretended to increase the board of directors from five to nine members, and then pretended to fill the vacancies by electing defendants Bosworth, McDaniel, Cronin and Lawrence members of the board, and immediately thereafter pretended to remove Templeman as president and Frantz as vice president, after which they pretended to make a contract turning over the properties of the company to the control of the Producers and Refiners Corporation.

The defendants denied the material allegations of the complaint, and by cross-complaint prayed for an order restraining the plaintiffs from assuming to act as officers or representatives of the Templeman Oil Corporation.

On the trial the Templeman Oil Corporation of Oklahoma and Northcutt were made parties by stipulation.

The court entered a decree for the defendants, as prayed in the cross-complaint, and from that decree the plaintiffs bring the case here for review. We shall refer to the parties as they were designated in the court below.

To properly understand the questions raised for deter-

mination, it will be necessary to give a somewhat extended statement of the facts, as shown by the record.

It appears that there are two corporations defendant under the name of Templeman Oil Corporation, and that the one originally made a defendant herein was organized under the laws of the state of Delaware and had its offices in Denver, Colorado, the other, senior in age, was organized under the laws of the state of Oklahoma, and had its offices at Tulsa in that state, and for the purpose of avoiding confusion we will hereafter designate them as the Delaware corporation and the Oklahoma corporation, according to the state of their origin.

On the 1st of March, 1920, the plaintiffs Templeman and Frantz came to Denver from Tulsa, to negotiate with the defendant Kistler concerning the unification and operation of certain oil leases. These conferences resulted in the making of a preliminary contract between the parties, whereby they agreed to organize a corporation, to which was conveyed certain oil leases owned by them. On March 20, 1920, in pursuance of that agreement, the Delaware corporation was organized, with a capital stock of $10,000,000. The stock was all issued to Templeman, Frantz and Kistler, out of which 5,000,000 shares were returned to the treasury. Templeman and Frantz received $100,000 in cash and $150,000 in notes from the Delaware corporation. Templeman, Frantz, Kistler, Grant and Lockhart constituted the board of directors. Templeman was elected president, Frantz vice-president, Lockhart treasurer, and Grant secretary. The plaintiffs were chosen general and assistant managers. At this time Kistler and Lockhart were directors and officers of the Producers and Refiners Company, a Wyoming corporation, actively engaged in operating oil properties in Wyoming, Oklahoma and other states.

It was originally contemplated that the Delaware corporation should be an operating company, but for the sake of economy the Oklahoma corporation was chosen for that purpose, and the Delaware corporation was made the holding company, and Templeman was directed to acquire all of

the issued stock of the Oklahoma corporation for the use of the Delaware corporation. Templeman thereafter secured all of the outstanding stock of the Oklahoma corporation and delivered the same to the Delaware corporation, and sent to Grant, the secretary, the minute books, stock ledger and stock certificate books which had theretofore been used by the Oklahoma corporation. Thereafter the Delaware corporation authorized its officers to advance money to the Oklahoma corporation necessary to carry on operations for the ultimate benefit of the Delaware corporation.

For the purpose of financing itself the Delaware corporation entered into a contract with Edwin M. Bosworth & Company, a brokerage firm, whereby the latter company agreed to purchase as well as sell a large block of the stock of the Delaware corporation. That contract was superseded by a modified contract, whereby the Bosworth Company purchased an additional block of stock and paid the Delaware corporation a large sum in cash and gave its notes aggregating $50,000 in addition, secured by Delaware stock. The notes were not paid when due, and became a source of contention. Bosworth was a large stockholder and was in the market, under his contract, to sell stock. He complained of the unreliable and misleading reports of the plaintiffs as managers, and the failure of production. The management had drilled five dry wells and had expended $330,000. The plaintiffs were persistent in their demands for more money from the Denver office, and finally threatened to sue Bosworth & Company on its overdue notes. Bosworth demanded a change of management and refused to make further payments under existing conditions. Plaintiffs reported that the Company's creditors were impatient, and if relief did not soon come there would be a crash.

In response to complaints, on October 19th the Company's auditor at Denver was sent to Tulsa to make an audit of the books kept by the plaintiffs at that place. Thereafter the three directors at Denver called a meeting of the board at Denver for November 1, 1920, and notified

the plaintiffs at Tulsa by telegraph. In reply, the plaintiffs telegraphed "Call meeting of Board at your office there at two P. M. Monday. We will be there. Only immediate action will prevent crash."

Pursuant to this call and exchange of telegrams, all of the members of the board of directors of the Delaware corporation met and organized a board meeting at Denver on November 1, 1920, Templeman presiding. This meeting was attended by defendant Lawrence, who presented the auditor's report of the examination of the books at Tulsa. It appeared from this report that the plaintiffs had paid themselves a salary of $1,000 a month since the organization of the Delaware Company, without any previous authorization. It was further reported that the plaintiffs had paid themselves $38,500 out of the funds of the Oklahoma corporation, which they credited upon the $150,000 notes held by them due from the Delaware corporation. It also appeared that there was $85,000 current obligations of the Oklahoma corporation, incurred by the Templeman and Frantz management.

The discussion at the meeting following the report of the auditor became acrimonious and disclosed a lack of confidence in the plaintiffs as officers and managers. It was stated that Bosworth was threatening trouble; that he had threatened criminal proceedings against Templeman; that he had his papers prepared for an injunction suit in which he charged Templeman and Frantz with fraud, mismanagement and misapplication of funds. The meeting of the board of directors, called for November 1, continued in session from the 1st to the 4th inclusive, and Templeman and Frantz attended all of them and participated in the proceedings, up to the latter part of the final session on the afternoon of November 4th. At the session of the 2nd Kistler proposed that the Bosworth people be put into the management and that they be made to bear responsibility with others. During all of these four days the board discussed and considered ways and means of solving the financial difficulties of the company, and sought to discover some

possible way to continue operations and developments. The plaintiffs refused to consider any proposal that did not provide that their notes for $150,000 be first paid. At this meeting on the 4th the plaintiffs presented the only proposition offered by them for the solution of the company's financial troubles, in substance as follows:

"In readjustment of management and finances of the Templeman Oil Corporation proposed by you, we beg to submit for your consideration the following proposition:

1.   That the Producers and Refiners Corporation advance the money and pay the notes held by the plaintiffs against the Delaware Corporation for $112,500 and interest.

2.   That the Producers and Refiners Corporation pay all outstanding debts of the Delaware Corporation in five days.

3.   That the Producers and Refiners Corporation advance the necessary funds to prosecute continuously the development and exploration of the Delaware Corporation properties.

4.   That should a consolidation of the properties of the Producers and Refiners Corporation and the Deleware Corporation be in the future effected, the plaintiffs should have the option to exchange or invest their shares of stock of the Delaware Corporation on the same basis as the Producers and Refiners stock should be allowed in exchange for Delaware Corporation stock in such consolidation.

5.   That the moneys due the Delaware Corporation should constitute items of credit for the Producers and Refiners Company for its payments and advances.

6.   That the plaintiffs should have two members of the board of directors.

7.   That the foregoing proposition is conditioned upon the Producers and Refiners Company assuming the management of the Delaware Corporation."

No action was taken on this proposition.

Later in the session of the 4th Templeman announced his intention of leaving the meeting then in session to consult his attorney. He was requested to bring his attorney into

the meeting. This he did not do. Grant stated to the meeting that some solution would have to be reached at that session of the board, and that he proposed to introduce resolutions for the purpose of increasing the membership of the board of directors from five to nine members, and that he would move that the board take action upon a proposed operating agreement with the Producers and Refiners Corporation. To accommodate the plaintiffs the meeting took a recess until 6 o'clock. Templeman and Frantz withdrew. The board reconvened at 6 o'clock, with Kistler, Grant and Lockhart present, but Templeman and Frantz did not return. Kistler was chosen temporary chairman, after which Grant introduced a resolution to amend the by-laws of the company increasing the members of the board of directors from five to nine members, which was unanimously adopted. After the adoption of the amendment, the board unanimously elected defendants Lawrence, Bosworth, McDaniel and Cronin as directors of the Delaware corporation, to fill the vacancies in the membership of the board created by the amendment. All of the newly elected directors were notified of their election. The newly elected members entered the board meeting, still in session, and after qualifying participated in all of the subsequent proceedings of the board.

The board then proceeded in due form to adopt a motion removing Templeman from the office of president, and Bosworth was thereupon elected to fill the vacancy caused by such removal. At the same time Frantz was, by the adoption of a like motion, removed from the office of vice president. Mr. Kistler suggested, as a means of solving the financial difficulties of the Delaware corporation, that the Producers and Refiners Corporation should take over the operations of the Delaware corporation, and stated that the former corporation would be willing to advance the necessary funds to pay all of the current obligations up to $85,000 and to furnish funds to carry on future operations and developments of the Delaware corporation, if that company would pay seven per cent interest for the advances

and a reasonable sum for management and give a lien on all of its assets and pledge the stock of the Oklahoma corporation as security for such advances. This proposal resulted in the execution of a contract in substance to that effect.

The Delaware corporation, claiming to be the sole stockholder of the Oklahoma corporation, directed the president and secretary to call a special meeting of the stockholders of the Oklahoma corporation, to be held at once, and also a special stockholders' meeting to be held at Tulsa November 8, 1920, and authorized Bosworth to represent the Delaware corporation in person or by proxy, and to sign a waiver of notice and to vote its stock at such special stockholders' meeting of the Oklahoma corporation. The Delaware corporation transferred one share each, of the stock of the Oklahoma corporation, to Bosworth, Cronin and Lockhart.

It appears that at such special meeting of the stockholders of the Oklahoma corporation at Denver, all of the outstanding stock, aggregating 6,200 shares, were present, waived notice and voted; that the defendants Bosworth, Lockhart and Cronin were unanimously elected directors of the Oklahoma corporation, and that the proposed operating contract with the Producers and Refiners Corporation was approved, and its officers authorized to execute and deliver the same for the purposes therein expressed; that immediately thereafter all of the directors met, qualified, and in due form organized and elected Bosworth president, Cronin secretary, and Lockhart vice president and treasurer of the Oklahoma corporation. The minutes of the special stockholders' meeting of that day, reciting the proceedings authorizing its officers to execute the Producers and Refiners Corporation operating contract, were read, approved and ratified. It also appears that the special stockholders' meeting of the Oklahoma corporation was held at Tulsa on November 8, 1920, pursuant to call, with all of the 6,200 shares of the outstanding stock of the Oklahoma Corporation present and represented by persons hold-

ing shares and accredited proxies, and after an organization was effected, in due form the defendants Lockhart, Cronin and Bosworth were unanimously elected directors. That thereafter the operating contract between the Delaware corporation and the Oklahoma corporation and the Producers and Refiners Corporation, dated November 4, 1920, was presented for the consideration of the stockholders' meeting, and on motion it was unanimously approved and ratified, and the special stockholders' meeting of November 4, 1920, held at Denver, Colorado, and the special Directors' meeting of November 4, 1920, held at the same place, and all actions taken in pursuance of such meeting, were unanimously approved and ratified.

Templeman testified that when he returned to Tulsa on November 8th, he endorsed his interest in the notes for $150,000 made by the Delaware corporation over to Frantz without consideration, and that Frantz immediately brought suit on the notes in the courts of Oklahoma against the Delaware corporation, and served process upon him as president, and that Frantz, as plaintiff in that action, thereupon attached the certificate of stock for 6,197 shares of the stock of the Oklahoma corporation which he, Templeman, had theretofore on that day issued to himself as trustee of the Delaware corporation. Templeman further testified that from blank certificates of stock of the Oklahoma corporation which he had in his safe at Tulsa, he sold one share each of the stock of the Oklahoma corporation, to himself, Northcutt, Franklin, Shigley, Neil Templeman and the plaintiff Frantz, and at the same time he issued another certificate for 6,197 shares of the Oklahoma corporation to himself, as trustee for the Delaware corporation. He testified that the certificate of shares issued to himself, Franklin and Shigley were issued for the purpose of qualifying such shareholders as directors of the Oklahoma corporation. He also testified that a stockholders' meeting composed of these stockholders of the Oklahoma corporation was held on the 8th of November, 1920, without any previous notice. He testified that he himself, Frantz and Neil

Templeman were elected directors, and at the meeting of the board of directors he was elected president, Frantz vice president, and Neil Templeman secretary, and that the board then ratified the payment of $38,500 on the $150,-000 note due from the Delaware corporation to himself and Frantz.

Thereafter the plaintiffs, assuming to be executive officers of the Delaware corporation, brought suit in the courts of Oklahoma in the name of the Oklahoma corporation against the Producers and Refiners Corporation to cancel the contract dated November 4, 1920, made by the Oklahoma and Delaware corporations and the Producers and Refiners Corporation. They also instituted a suit in the District Court of the United States, at Tulsa, Oklahoma, in the name of the Oklahoma corporation, against the Producers and Refiners Corporation, asking for a receiver and praying for partition and accounting of the Willie King lease, which was owned jointly by the Delaware corporation and the Producers and Refiners Corporation. Assuming to be the executive officers of the Oklahoma corporation, they brought another suit praying for the appointment of a receiver of the Oklahoma corporation. Assuming to be the executive officers of the Delaware corporation, they brought still another suit in Denver, Colorado, in the name of the Delaware corporation, against Edwin M. Bosworth & Company, on the notes made by that company to the Delaware corporation.

Thereupon the Delaware corporation called a meeting of its board of directors, to be held November 28, 1920, at Denver, Colorado, to consider and to take action with reference to certain litigation purporting to have been brought in the name of The Templeman Oil Corporation, and litigation involving this company; and to amend the by-laws increasing the membership of the board of directors, to elect additional members of the board, and to consider any other matters coming before the board. The giving of this notice calling a meeting of the board precipitated this action in the court below.

Counsel for plaintiffs contend that the purpose of the November meeting of the board was the culmination of the fraudulent intentions and schemes of Kistler, Grant and Lockhart previously designed by them to dissipate the assets and to turn over the management of the properties of the Delaware corporation to the control of the Producers and Refiners Corporation, and that their fraudulent schemes tainted and pervaded the whole proceedings of the meeting, rendering the entire action of the board on November 4th absolutely void, and they assert that this raises the real question involved in the case. This raises a question of fact which the trial court found against them.

The trial court found "that the testimony wholly fails to show that there was any fraudulent intention or action upon the part of any of the individual defendants tending in any way to deplete the assets of the defendant corporation, or in any way to jeopardize the credit or good standing thereof; but on the contrary, the evidence affirmatively shows that all of the steps taken by the individual defendants in this case were with a view to place the said company in such a position as to continue its work, to the end that the stockholders thereof might eventually benefit thereby." And it also found "that a critical situation had arisen which threatened to annihilate both corporations."

From our examination of the record we have reached the same conclusion as the trial court. The evidence not only supports the finding of the court that there was no fraudulent purpose on the part of the directors, but the evidence conclusively shows that the company's financial affairs had reached a crisis, and a failure of the corporation was imminent. It appears that no solution had been offered in this critical situation, either by the plaintiffs or the defendants, in the session of four days of the board, other than that the management of the Delaware corporation should be taken over and managed by the Producers and Refiners Corporation, which in different forms had been proposed by both plaintiffs and defendants. Under the plaintiffs' exclusive management, as general and as-

sistant managers, they had expended large sums of money; they had involved the company with debts; there were no returns, the losses were large; the plaintiffs had thus far failed in their undertakings; there was dissatisfaction among the stockholders, and there was a lack of confidence in the existing management. The plaintiffs, in this situation, offered no solution, except that the obligation of the corporation to them of $112,500.00 be first paid, after which they themselves offered to turn over the management of the company's affairs to the Producers and Refiners Corporation, with Kistler as its president, and that the Producers and Refiners Corporation should pay $85,-000.00 of the Delaware Corporation debts, and that it should also furnish all funds necessary to continue developments and prosecute future explorations of the company. Under such circumstances, which threatened to annihilate both corporations, the trial court found that the operating agreement with the Producers and Refiners Corporation of November 4th was the only practical solution of the existing difficulties of the Delaware corporation, and offered the only ray of hope to the stockholders. Directors Kistler, Grant and Lockhart were seeking to save the corporation from the impending crash predicted by plaintiffs, by taking immediate action. They seemed to be acting in good faith, and the trial court so found. It is elementary that the directors of a corporation have the right to determine the policy of the company and to manage its affairs, in the exercise of an honest judgment, if they act in good faith. *Griffith v. Sprowl,* 45 Ind. App. 504, 91 N. E. 25.

It therefore follows, from our view of the record, and we must so hold, that the meeting of the board of directors of November 4th was free from any taint of fraudulent purpose or design on the part of directors Kistler, Grant and Lockhart.

If there was no fraudulent purpose in the minds of these directors at the time of calling the special meeting of the board, and they were free from any fraudulent design or purpose, as we have just held, did the assembly of all of

the directors at the time and place named in the call, constitute a lawful meeting of the board, empowered to transact the legitimate business of the corporation?

The company's by-laws provide that a director may at any time waive any notice required by statute or the by-laws, and that the presence of a director in person and at any directors' meeting shall be deemed such a waiver. All of the directors in person, at the time and place named in the call, assembled and organized into a board meeting, with plaintiff Templeman as president, presiding. This conformed with the requirements of the by-laws. Nothing more was required by the statutes or the articles of incorporation to constitute the assembled directors a legal meeting for the transaction of corporate business. It must therefore be held to be a legal meeting of the board.

We are next to determine whether it was within the lawful power of the board of directors so assembled to amend its by-laws and increase the number of the members of the board from five to nine members, and to immediately thereafter elect members to fill the vacancy so created by the amendment; and if so, could a majority of the board take the same action after two of their members had voluntarily abandoned the meeting while in session, with full knowledge of the action proposed to be taken thereafter by the majority?

The articles of incorporation provide: Section 9. "The number of directors of the corporation shall be fixed, and may be altered from time to time as may be provided in the by-laws. In case of an increase in the number of directors, the additional directors may be elected by the board of directors * * * as shall be provided in the by-laws."

Section 10. "The board of directors is expressly authorized, without the assent of the votes of the stockholders, to make, alter, amend, alter and rescind the by-laws of the corporation."

The by-laws of the company provide: Section 25. "At all meetings of the board a majority of the directors shall

be necessary and sufficient to constitute 'a quorum for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the board of directors."

Section 46.  "These by-laws may be altered or amended * * * by the affirmative vote of a majority of the board of directors."

Section 12.  "In case of any vacancy in the board of directors through amendment of these by-laws, to increase the number of said board of directors * * * the directors then in office, although less than a quorum, by majority vote shall fill such vacancy by the election of a director or directors to hold office until the election and qualification of a successor or successors."

From these provisions of the articles of incorporation and the by-laws, it appears that Kistler, Grant and Lockhart, who constituted a majority of the board, acted within the express authority of the articles of incorporation and the by-laws, and that the adoption of the amendment by unanimous vote increasing the members of the board, was a valid exercise of corporate power.

It is clear that the abandonment of the meeting in the midst of its session by Templeman and Frantz, could not have the effect of annulling the by-laws or abridging the authority conferred thereby.  The action of a majority of the board of directors, in electing members to fill the vacancies created by the amendment, in pursuance of the authority of section 12 of the by-laws, was a lawful exercise of the power of the board.

It is next contended that the removal of Templeman as president and Frantz as vice president, was without authority and illegal.

Section 28 of the by-laws provides:  "The officers of the corporation shall hold office until their successors are chosen and qualified in their stead.  Any officer elected or appointed by the board of directors may be removed at any time by the affirmative vote of a majority of the whole board of directors."

The motion for removal was carried by the affirmative vote of Kistler, Grant and Lockhart, who constituted a majority of the whole board of directors. The cause of the removal was stated to be that Templeman and Frantz were not in accord with the policy of the corporation necessary to preserve the properties of the corporation, and that they were unwilling to make any concessions subordinating the indebtedness of the Delaware corporation to them, so as to enable the company to enlist additional funds with which to pay current obligations and to carry on future operations of the corporation.

"The power to remove an officer for cause inheres in every corporation as a part of its being. The power of removal extends to all of the officers of a corporation, including the president." 3 Fletcher Cyc. Corp. 3007; *Griffith v. Sprowl, supra.*

"Where a by-law provides that any officer might be removed by a majority vote of the board whenever the best interests of the company might require it, it was for the directors and not for the court to determine what was for the best interests of the company." 3 Fletcher Cyc. Corp. Sec. 1822; *Griffith v. Sprowl, supra.*

In the absence of a finding of fraud, the action of the majority of the whole board, removing the plaintiffs from the offices of president and vice president in pursuance of the by-laws, must be upheld, and the plaintiffs, after such removal, had no authority to assume that they were officers of the Delaware corporation and to institute legal proceedings in its name.

It is also true that neither the plaintiff Templeman nor the former directors of the Oklahoma corporation had any right or authority to assume to be officers of the Oklahoma corporation, or to institute legal proceedings in the court of Oklahoma in the name of that corporation. They were neither stockholders nor officers. Prior to the meeting in November, all of the stock of the Oklahoma corporation had been transferred to the Delaware corporation, which became thereby the sole stockholder. The Oklahoma

corporation therefore had no individual stockholders, and there was no person qualified to hold office or to act officially as the representative of that company. It had no president, directors or organization from July 20 to November 8, 1920. The Oklahoma corporation as a corporate body had ceased to function. It had become an inert corporate entity, with its franchise in abeyance. The Delaware corporation, as the sole stockholder, however, possessed the right to dispose of its stock to others, and by so doing to make it possible to effect a reorganization and revive corporate functions by the election of the necessary officers. Until this or similar action should be taken by the sole stockholder, official corporate activity would remain in complete suspension. *Swift v. Smith, Etc., Co.*, 65 Md. 428, 5 Atl. 534, 57 Am. Rep. 336; *Louisville Banking Co. v. Eisenman*, 94 Ky. 83, 21 S. W. 531, 1049, 19 L. R. A. 684, 42 Am. St. Rep. 335; *First Nat. Bank v. Winchester*, 119 Ala. 168, 24 So. 351, 72 Am. St. Rep. 904.

The by-laws of the Oklahoma corporation provided that no person should be elected or act as director who was not a stockholder, and that the transfer of all stock of a director should *ipso facto* operate as a resignation of his office; and the by-laws contained the further provision that no person should be elected to the office of president or vice president who were not directors, and when they cease to be directors they should cease to hold office. Templeman and the other directors of the Oklahoma corporation ceased to be officers, by virtue of the by-laws, when all of the stock of that company was transferred to the Delaware corporation. It therefore follows that the assumption of Templeman to issue certificates of stock to himself and others, made on blank certificates in his possession, and the pretense of holding meetings simulating stockholders' and directors' meetings based upon this spurious issue of stock, is wholly void.

We express no opinion as to the validity of the contract made by the Delaware and Oklahoma corporations and the Producers and Refiners corporation dated November 4,

1920, as the latter corporation is not a party to this review. A decree cancelling that contract is not sought here. That remedy remains open to plaintiffs in a proper proceeding, where all necessary parties shall be before the court.

Judgment affirmed.