**GILBERT et al. v. BEACH et al.**

No. 5207.

District Court of the United States for the District of Columbia.

Dec. 3, 1941.

John E. Powell, of Washington, D. C., for plaintiff.

Leslie C. Garnett, of Washington, D. C., for defendant.

Francis W. Hill, Jr., of Washington, D. C., guardian ad litem.

LAWS, Associate Justice.

Hearing on bill to construe the last will and testament of John A. Baker, deceased, insofar as it makes provisions for a charitable trust.

Testator died on May 6, 1929, leaving as his sole heir at law and next of kin his legally adopted daughter, Elizabeth Baker Kemp Beach. His last will and testament dated June 11, 1928, and a codicil dated August 31, 1928, were regularly admitted to probate. By his will, after making specific bequests and devises, provision is made that the residue shall go to trustees, namely, National Savings and Trust Company and Mary G. Baker (widow of testator's son), part of the income from the trust to be used for a number of specified purposes

and the residue of income to be paid in portions of three-fourths to Mrs. Beach and one-fourth to Mrs. Baker. Upon the death of Mrs. Baker, testator directs that Eva Nelson Gilbert shall be substituted as trustee in place of Mrs. Baker, and thereupon, by provisions made in clause 9 of his will, the trustees, amongst other things, are directed to transfer and deliver "one-fourth of the principal of the trust estate heretofore created and the accumulations of interest thereon, if any, to the said National Savings and Trust Company, absolutely and in fee simple, in trust nevertheless, to hold the same perpetually, with power to invest and reinvest the same in such manner as shall appear to said trustee to be wise as a charitable trust." The testator then provides payments from the trust thus created to be made to three committees, one in Prince Georges County, Maryland, another in Montgomery County, Maryland, a third in Fairfax County, Virginia. Each of these committees is to consist of five white persons residents for five years or more of the county mentioned, and is to be selected annually by pastors of certain named churches in said county. Each committee is to apply what it receives from the trust for the medical welfare, support and care of such indigents and indigent sick white persons in the county mentioned as in its discretion shall be selected. In the concluding paragraph of this clause of testator's will, it is directed that if any committee shall fail to function, the share not applied by said committee shall go to and increase the share to be applied by the other committees provided for in said clause.

The defendants in this cause, Mrs. Beach and her three minor children, through their guardian ad litem, contend that the provisions in clause 9 of testator's will, attempting to set up a charitable trust, are invalid. Mrs. Beach contends that by reason of their invalidity, decedent died intestate as to the part of the estate set aside for the charitable trust and that she becomes entitled to it as his sole heir at law and next of kin. The guardian ad litem for the children calls attention to a provision in clause 6 of the will, by which testator directs that "if, for any reason and at any time, prior to the final distribution of this trust estate, any part of the net income hereof be not disposed of, or does not pass under any of the aforegoing clauses of this my will, making distribution of the same, such undisposed of income shall be and become part of, and increase the net income of my estate effectually disposed of under said clauses of this will." The guardian contends the effect of this provision is to require the trustees, in the event the charitable trust is held invalid, to hold the estate attempted to be given to the charitable trust as part of the estate which is placed in trust for the life of Mrs. Beach and for 21 years thereafter and then is to be divided among her issue. The complaint prays that in the event the court shall construe testator's will as not effectively establishing a charitable trust, the trustee shall be instructed as to what disposition shall be made of the estate and properties referred to in said clause 9.

Mrs. Mary G. Baker died on July 30, 1937. Thereafter Eva Nelson Gilbert succeeded Mrs. Baker as co-trustee with the National Savings and Trust Company and committees were set up in the three counties mentioned by clause 9 of testator's will to administer the charitable trust. The testimony in this case shows that said committees, having had funds made available to them by the National Savings and Trust Company, undertook to and did carry out the provisions of testator's will by aiding indigents and indigent sick in the counties mentioned. This continued until April, 1939, when the question was raised as to the validity of the charitable trust created by clause 9 of testator's will. Thereupon the further carrying out of the charitable trust provisions of clause 9 was stopped, and the bill of complaint was brought herein for the purposes heretofore stated.

The defendants maintain the charitable trust provisions of clause 9 are invalid for a number of reasons, principally among them the following: First, that as of the time of the death of the testator, charitable trusts such as the one attempted to be created by testator were invalid both in the States of Maryland and Virginia, the places where they were to be administered. Second, granting, arguendo, there came a time, after the date of death of testator but before the trusts were to be put in operation, when both the States of Maryland and Virginia passed statutes under which the trusts might validly operate, yet since the will spoke as of the time of the death of testator, the statutes had no effect upon the present case. Third, that the said statutes of Maryland and Virginia do not apply to the charitable trust attempted to be created

170

by testator, for the reason that the provisions are too indefinite, uncertain and cumbersome to be administered under supervision of courts of chancery.

The questions raised by defendants as to supervision of the trusts by courts of chancery are important to be determined in reaching a decision of this case. To answer these questions it is necessary to ascertain what trust or trusts were created by testator. Reference to the will shows that the National Savings and Trust Company in the District of Columbia is appointed to hold a specified part of decedent's estate to be used for the charitable trust; the trust company is charged with the duty of investing and reinvesting the same and of paying the income over to committees in the counties in Maryland and Virginia. The committees in the two counties in Maryland and the one county in Virginia are to separately administer the funds thus paid over to them. No accounting by the committees to the National Savings and Trust Company is required by the will. While this might be said to indicate separate trusts, yet it is apparent the testator's plan contemplated a concert of action. The general language of the will indicates this, as well as the specific provision to the effect if one or more of the committees which were to distribute his trust estate should fail to function, the share not applied by said committee should go to and increase the share to be applied by the other committees. I, therefore, conclude that what testator sought to accomplish was the setting up of a trust, to be separately administered in the District of Columbia, in Prince Georges and Montgomery Counties in Maryland, and in Fairfax County in Virginia. In a trust of this character, I see no reason why the chancery courts of the District of Columbia may not supervise the fiduciary which has an estate in the District of Columbia and prescribed duties with respect to such estate; nor why, when funds are made available to fiduciaries in the counties of Maryland and Virginia, the courts of those respective counties might not exercise supervision over the funds and the fiduciaries in those counties. Wherever there is a res in relation to a trust, the court may deal with it in the enforcement of the trust. Swetland v. Swetland, 105 N. J.Eq. 608, 149 A. 50. On the other hand, the situs of the corpus of a trust fund being in another State is not fatal to the jurisdiction of trustees present in the State whose court is asked to assume control.

As stated in Perry on Trusts, page 472: "Equity acts in personam and if it has jurisdiction of the person of the defendant, may order him to account for all disposition of the trust property, as the principles of equity dictate, even though the trust property be situate in a foreign jurisdiction."

In the case at bar we have both a res and fiduciaries in each of the three jurisdictions where the trust plan is to be carried out. The separate duties of the fiduciaries are defined. There is no occasion for conflict between the courts of the several jurisdictions. It is true that in Maryland and Virginia, since there is possibility of annual substitutions of trustees, inconveniences and problems of accounting may arise. However, I find the provisions of testator's will as to these substitutions seem clear and that no insurmountable difficulties appear possible to arise. I, therefore, find no substance in the above-mentioned third contention of defendants that the provisions of the charitable trust may not be administered under supervision of courts of chancery.

The remaining questions are more difficult. Without undertaking to review the decisions cited by counsel and the references to the various statutes which have been passed in Maryland and Virginia, I have concluded from a study of them that not until 1931 in Maryland, and not until 1934 in Virginia, was provision made whereby a charitable trust of the type referred to in testator's will might become effective. It seems this was so primarily for the reason that since no rights would become vested in ascertained beneficiaries, and provision otherwise had not been made to bring about the supervision of the trust, there was no one competent to enforce such a trust. I think, however, that the Maryland Act of 1931 (Chap. 453, 1935 Supp. Ann.Code of Md., Vol. 3, Art. 16, Sec. 268A) and the Virginia Act of 1934 (Sec. 6298a, Virginia Code, 1936) made provisions whereby a charitable trust such as was set up by testator might be upheld in those States. I further think the cases of Vidal v. Girard's Executors, 2 How. 127, 11 L.Ed. 205, Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 24 L.Ed. 450, and others referred to in the brief of plaintiff establish that at all the times involved in this case, the charitable trust sought to be established by testator would be valid and might be carried out in the District of

Columbia. Therefore, at the time of the death of testator in 1929, the charitable trust created by his will was valid in the District of Columbia, his domicile. It would not be valid in Maryland or Virginia because it was not operative in those States,—no means had been provided to effectively bring about supervision by the courts over that part of the trust which was to be administered there. Would these circumstances cause the charitable trust in the case at bar to be struck down?

In the briefs of opposing counsel, there is a discussion of the question as to whether the law of the domicile of testator, or whether the law of the place where the trust created by him is to be administered, shall control in passing upon the validity of the trust. Cases apparently holding conflicting views are cited. A study of these cases has lead me to the conclusion that they may be readily reconciled. The principal impression given in all of them is that the courts favor charitable trusts and will uphold them if possible. In a recent book on the subject of "Trusts in the Conflict of Laws" written by Walter W. Land, of the New York Bar, there is a review of a number of these decisions. He discusses these in the State of New York separately from those in other States. After reviewing many of the cases which are referred to and discussed by the briefs of counsel in the case at bar, the author, by way of summarizing those in New York, states as follows:

"The rule thus laid down for both charitable and non-charitable trust cases that if a trust is valid by the foreign law of a testator's domicil, it will be upheld and administered in New York even though it violates the New York rule against accumulations or perpetuities has been followed in New York down to the present time. In every case in which the testator was domiciled in a foreign state and the trust was to be administered in New York the trust was upheld by the application of the law of the testator's domicil, whereas if the law of New York, the place of administration of the trust, had been applied, the trust would have been declared invalid.

"However, when the situation is reversed, i. e., when the trust would be invalid if tested by the law of the testator's domicil, but would be valid if tested by the law of the place of administration, then the courts of New York have refused to follow the rule that the law of the testator's domicil governs the essential validity of a testamentary trust of personalty. In such cases they have applied instead the law of the place of administration in both charitable and non-charitable trust cases, regardless of whether New York was the testator's domicil or the place of administration. By 'place of administration' the courts usually mean the combination of domicil of the trustee, physical location of the securities, constituting the trust res, and place in which the business of the trust is carried on." (Pages 65, 66)

In relation to the jurisdictions other than New York, the author, after discussing decisions, states: "In summation, it may be stated that, outside of New York, the law of the testator's domicil is ordinarily applied to determine the essential validity of a testamentary trust of personalty. If the trust is being administered in a state other than the domicil of the testator and the trust would be struck down by the application of the domiciliary law, the law of the place of administration has been applied if it will sustain the trust. This exception has been applied to both charitable and non-charitable trust cases and the same conclusion that was reached as to New York law is therefore applicable to states other than New York." (Page 80)

In all the cases which have come to my attention I have found none where a trust, valid according to the laws of the domicile of the testator and possible of being carried out in another jurisdiction when it became effective, was held to be invalid because it had not been possible to be carried into effect when testator died. On the other hand, there are cases which uphold such a trust, among them the following being particularly in point: Fellows v. Miner, 119 Mass. 541; Dammert v. Osborn, 140 N.Y. 30, 35 N.E. 407, 409.

In the latter case, in upholding a trust of a testator domiciled in Peru, which had been held by the trial court to be invalid in the State of New York, where it was to be administered, the Court of Appeals in New York said as follows:

"At every stage of the inquiry pressed upon us by this appeal, it is important to keep in view a fundamental fact * * * that the bequest to the Sevilla Home was perfectly valid by the law of Peru, the domicile of the testator, which governed his personal property, wherever it was at the time of his death. * * * The general principle that a disposition of personal

property, valid at the domicile of the owner, is valid everywhere, is of universal application. It had its origin in that international comity which was one of the first fruits of civilization; and in this age, when business intercourse and the process of accumulating property take but little notice of boundary lines, the practical wisdom and justice of the rule is more apparent than ever. It would be contrary to the principles of common justice and right upon which the rule is founded to permit a testamentary disposition of personal property, valid by the law of the domicile, to be annulled or questioned in every other country where jurisdiction was obtained over the property disposed of, or the parties claiming it, except for the gravest reasons. There are, no doubt, some exceptions to the rule, founded upon considerations of public policy and necessity. Foreign contracts or dispositions of property, which, if carried out, would endanger the public morals or the public safety, or undermine the political or social fabric, or subvert the administration of justice, or have other evil tendencies, are not within the rule, as the right and duty of self-preservation is higher and stronger in every community than any obligation founded in comity.

"But the object of this bequest, instead of tending to such results, was highly laudable and commendable, and certainly there is no public policy that forbids its execution."

■ In the case at bar, there was no conflict of public policy at any time between the District of Columbia and the States of Maryland and Virginia. There was simply a difference, as of the time of the death of testator, between the laws of these respective jurisdictions in the matter of power to administer trusts of the character provided by testator. In the District of Columbia, the trust might be administered and the administration supervised by the courts; in Maryland and Virginia, the trust might be administered, but there was no provision by which any person might apply to the courts for supervision of the administration. It is true this circumstance would be fatal to a certain form of trust, namely, one which became effective at once. But it would not be fatal to a different form of trust, namely, one which became effective in the future and at that future time was capable of both being administered and the administration supervised by the court.

Counsel for defendants point to the language of Chief Justice Marshall, in the Trustees of Philadelphia Baptist Association v. Hart, 4 Wheat. 1, 28, 4 L.Ed. 499, as tending to refute this view. In that case the trust was held void because trustees were not in being to take over the trust as of the time of the death of testator. The language referred to is as follows:

"At the death of the testator, then, there were no persons in existence who were capable of taking this bequest. Does the subsequent incorporation of the association give it this capacity?

"The rules of law compel the court to answer this question in the negative. The bequest was intended for a society which was not, at the time, and might never be, capable of taking it. According to law, it is gone forever. The legacy is void; and the property vests, if not otherwise disposed of by the will, in the next of kin. A body corporate, afterwards created, had it even fitted the description of the will, cannot divest this interest, and claim it for their corporation."

■ This case undoubtedly is authority for the view that the validity of a will is to be determined as of the time of the death of testator. But this is not authority for the view that the validity of a will must be determined by circumstances existing at the time of the death of testator. In the Philadelphia Baptist Association case, the trust became operative immediately on the death of testator in 1795. At that time the trustee named in the will, the Baptist Association, was not capable of carrying out the trust; and no trustee capable of carrying out the trust was in existence until two years later. In the case now under consideration, as soon as the trust estate came into operation, there were trustees who might be, and who were in fact, forthwith selected competent to administer the trust, according to the laws of the States where the trust was to be carried out. It seems to me, therefore, that the case of Inglis v. Trustees of Sailor's Snug Harbor, 3 Pet. 99, 7 L.Ed. 617, may be said to apply to the case at bar. In the Inglis case, testator gave the residue of his estate, real and personal, to the Chancellor of the State of New York and recorder of the City of New York, in trust to build a hospital for supporting aged, decrepit and worn-out sailors; after giving direction as to the management of the fund by his trustees, he add-

ed that if his purpose could not legally be accomplished as provided by his will, it was his will that an act of the Legislature be sought to organize a corporation to carry out his purposes. Five years after testator's death, a law was passed creating a corporation to act as trustee to carry out the will. The Supreme Court held that if the plan of the testator could not be carried out as at first he had contemplated, nevertheless the provisions for the corporation removed all the difficulty. Speaking on the point urged against the trust that it would not become effective at the death of testator, since the corporation was not in existence and the property accordingly would not vest for trust purposes, the court said:

"And what objection can there be to this, as a valid executory devise, which is such a disposition of lands, that thereby no estate vests at the death of the devisor, but only on some future contingency? By an executory devise, a freehold may be made to commence in futuro, and needs no particular estate to support it. * * * [3 Pet. at page 115, 7 L.Ed. 617].

"The devise, then, as also in the case now before the court, does not purport to be a present devise, but to take effect upon some future event. And this distinguishes the present case from that of the Baptist Association v. Hart's Executors, in another important circumstance. There, it was a present devise, here, it is a future devise. * * * [3 Pet. at page 116, 7 L.Ed. 617].

"In Thellusson v. Woodford 4 Ves [Jun.], 325, Buller, Justice, sitting with the Lord Chancellor, refers to and adopts with approbation, the rule laid down by Lord Talbot, in Hopkins v. Hopkins—that in such cases (on will) the method of the courts is not to set aside the intent, because it cannot take effect so fully as the testator desired, but to let it work as far as it can. Most executory devises, he says, are without any freehold to support them; the number of contingencies is not material, if they are to happen within the limits allowed by law. That it was never held, that executory devises are to be governed by the rules of law as to common-law conveyances. The only question is, whether the contingencies are to happen within a reasonable time or not. The master of the rolls, in that case says (p. 329), he knows of only one general rule of construction, equally for courts of equity and courts of law, applicable to wills. The intention of the testator is to be sought for, and the will carried into effect, provided it can be done, consistent with the rules of law."

To the same effect is Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 5 Otto 303, 24 L.Ed. 450.

There were two contingencies in the will of the testator in the case at bar, one (in the event the life tenant predeceased testator) which would bring about the commencing of the charitable trust in præsenti; the other (in the event the life tenant survived testator) which would bring about the commencing of the charitable trust in futuro. The latter contingency, anticipated by testator, was what in fact occurred. Therefore, it seems clear that what eventuated in point of fact upon the death of testator was the contingency which created an executory devise or disposition of property. No particular estate was needed to support such an executory disposition of property; title was vested in trustees holding for the life tenant during the time before the executory disposition became effective. When it did become effective, the laws of all jurisdictions concerned not only approved the disposition as valid, but had in effect a means of bringing about supervision of the administration of the trust. It seems to me, therefore, that under the law established by the decisions of the courts, the charitable trust created by testator must be upheld.

Aside from the legal authorities, the reasoning in support of the validity of the trust in the present case seems to me to be infallible. The court of the District of Columbia, testator's domicile, finds a will of its citizen, proper in all respects, according to its laws. It is the duty of the court to give effect to the testator's wishes, if possible. Having found the laws of its own jurisdiction approve the provisions of this charitable trust, the court looks to the laws of the places where the provisions are to be carried out. Perhaps it is true those laws formerly did not provide the means of administering or supervising trusts of this character. But they now do. Moreover, trusts of this character are favored in those jurisdictions. What possible reason, then, can be advanced to frustrate testator's avowed wishes? No rule of law is offended, the objects are laudable in all the jurisdictions concerned, there are present means of bringing about administration of the trust in all jurisdictions where they are to be carried out, there are courts available to supervise them. Under these circum-

stances, reason and logic compel the sustaining of the trust.

The judgment of this court, therefore, will uphold as valid testator's will, insofar as it creates a charitable trust.