[Civ. No. 49655. Second Dist., Div. Three. Apr. 27, 1978.]

AMERICAN CENTER FOR EDUCATION, INC., et al.,
Plaintiffs and Appellants, v.
SAMUEL M. CAVNAR et al., Defendants and Appellants.

COUNSEL

Al Schallau and Monty H. Amyx for Plaintiffs and Appellants.

Donnelly, Clark, Chase & Johnson, William M. Smiland and Clifford Douglas for Defendants and Appellants.

OPINION

COBEY, Acting P. J.—Defendants, United California Bank (hereafter UCB), Samuel M. Cavnar, George Todt, and Robert Davies, each appeal from a judgment that (1) each of the named individuals be removed from any position each claims to hold with plaintiff, American Center for Education, Inc. (hereafter ACE), whether as director, member of executive committee, officer or employee, and (2) ACE have damages against each of the just-named defendants (except Davies) in the principal amount of $80,000 together with 7 percent annual simple interest thereon from May 15, 1970. ACE has cross-appealed from an order denying its motion for judgment notwithstanding the verdict against UCB alone in the principal sum of $137,793.22. The appeals and the cross-appeal lie. (Code Civ. Proc., § 904.1, subds. (a), (d).)

FACTS[1]

ACE is a nonmembership, nonprofit, conservative and patriotic tax-exempt corporation which was organized under the laws of the District of Columbia on January 17, 1969, but which has always had its principal place of business in Los Angeles. Plaintiff, Hurst B. Amyx, was the founding president of ACE. From January 21, 1969, until May 15, 1970, Amyx was president, Cavnar vice president and treasurer, and Todt vice president and secretary of ACE. From January 21, 1969, until April 20, 1970, the board of directors and the executive committee of ACE consisted of these three individuals and another individual (Cartlidge), who resigned on the last-mentioned date and was not replaced.

---

[1]This statement of facts is taken largely from the findings of fact of the trial court and from the statement of facts in *American Center for Education, Inc.* v. *Cavnar* (1972) 26 Cal.App.3d 26 [102 Cal.Rptr. 575], an earlier decision of this court in this litigation. The trial court expressly adopted and found as true all the findings that the advisory jury returned upon special interrogatories submitted to it.

Strong differences over the program being pursued by ACE arose between Amyx, on the one hand, and Cavnar and Todt on the other. Acting on the advice of a District of Columbia attorney (Manuel), the attorney who had incorporated ACE, Cavnar and Todt went to Amyx's office on May 15, 1970, to convene a meeting of ACE's executive committee. The purpose of this meeting was to oust Amyx as an officer, director and member of the executive committee. Under the articles of incorporation of ACE the minimum number of directors was three and under the bylaws of ACE three members of the board of directors and three members of the executive committee likewise constituted quorums of these bodies. As soon as Cavnar pronounced the word "meeting," Amyx left the room. Thereupon, while in Amyx's office, while going from there to a Hollywood branch of UCB (where ACE's funds were located), and at this branch (where they again encountered Amyx) Cavnar and Todt attempted to function as the executive committee of ACE. In so doing they purportedly ousted Amyx from all of his offices, replaced him as president with Cavnar and elected Davies a director.

At this time, ACE had a checking account with a balance of $149,536.58 at this branch. The agreement between UCB and ACE required that all checks on this account be signed by Amyx and either Cavnar or Todt.

Amyx, Cavnar and Todt had a confrontation at the bank in the presence of the branch manager (Benecke).[2] Cavnar and Todt told Benecke that Amyx was being removed from his various offices with ACE. Amyx informed the manager that this purported removal was invalid and that he would hold UCB liable for any funds of ACE that the bank dispensed without his signature.

Later that afternoon Benecke, without examining the bylaws of ACE, which Amyx offered to him, and without consulting with UCB's legal department, transferred by means of a memorandum charge $137,793.22 of ACE's funds from its checking account to a savings account which had been opened in ACE's name by Cavnar and Todt. Subsequently, these funds were transferred to a checking account bearing ACE's name, but on which the only authorized signers were Cavnar and Todt.

At 6 p.m. on the same day, May 15, 1970, the purported new board of directors of ACE, namely Cavnar, Todt and Davies, met. Cavnar resigned

---

[2]We later hold that this confrontation constituted a valid executive committee meeting.

as president and Todt as secretary. Todt was then elected president, Cavnar treasurer, and Davies secretary. Following this, Todt, Cavnar and Davies noticed a board meeting for May 25, 1970, for ratification of the purported actions of the executive committee and the board of directors on May 15, 1970, and for the election of new officers and directors.

Following the events of May 15, 1970, Todt and Cavnar caused Amyx to be locked out of his offices at ACE by means of barriers and armed guards, and discharged those staff members of ACE whom he had employed.

Amyx was served with a copy of the notice of the May 25 meeting, but he did not attend. The meeting took place, and the purported actions of May 15 were ratified by Cavnar and Todt with Davies abstaining. Another division of this court, however, in the already cited prior appeal in this litigation, indicated that on the record in that appeal, the special board meeting of May 25, 1970 *may* not have been called in accordance with ACE's bylaws. (*American Center for Education, Inc.* v. *Cavnar, supra,* 26 Cal.App.3d at p. 35.) The trial court herein went further. It concluded that the board of directors meeting of May 25, 1970 was invalid for want of a quorum.

On June 24, 1970, Amyx filed the instant action on behalf of himself and ACE. In it he challenged the legality of his purported ouster and the obtaining of control by Cavnar and Todt of ACE's funds on deposit with UCB.

The trial court found that in the attempted ouster of Amyx and in the transfer of the control of the funds of ACE on deposit at UCB, Cavnar and Todt abused their authority and discretion as directors and officers of ACE and apparently also acted negligently and wrongfully. The trial court and the advisory jury found as well that UCB negligently and wrongfully paid out ACE's monies on deposit with UCB upon instruments not signed by Amyx and that the sum of $80,000 represented the damages ACE suffered by reason of misconduct on the part of UCB, Cavnar and Todt in connection with the takeover and subsequent thereto.

### SYNOPSIS OF DECISION

For reasons hereinafter stated, we will hold that (1) the executive committee of ACE validly met at the bank on May 15, 1970; (2) at this meeting Davies was validly elected a director; and (3) Amyx was validly

removed as president and member of the executive committee. We further hold that a valid meeting of the board of directors was held on May 25, 1970, at which meeting Amyx was validly removed as director. Consequently, Amyx lacked standing thereafter to bring suit on behalf of the corporation, and therefore the judgment must be reversed.

## DISCUSSION

### I. PRELIMINARY QUESTIONS

#### A. *Law of the Case*

We must first deal with the question of the extent to which this decision is controlled by the aforementioned earlier decision in this case of another division of this court. (*American Center for Education, Inc.* v. *Cavnar, supra,* 26 Cal.App.3d 26.) That decision, among other things, reversed a partial summary judgment that had been granted against Amyx. Therein it was held that: (1) since the initial quorum of the executive committee was apparently involuntary, a triable issue of fact[3] existed as to whether the committee had validly met on May 15, 1970 (*id.,* at pp. 30-31); (2) under the bylaws of ACE the one power which was not delegable to the executive committee by the board of directors was the power to remove directors (*id.,* at pp. 31-33); and (3) the record then before the court could not support a finding that the May 25, 1970, meeting was validly called—presumably because such validity would have to rest upon the answer to the then unresolved question regarding whether Davies had been validly elected a director on May 15 (*id.,* at p. 34, fn. 6).

#### B. *Choice of Law*

Another threshold question is what law should govern our decision in this case. The election and removal of officers are matters involving the internal affairs of a corporation, and California courts generally apply the laws of the place of incorporation in such instances. (E.g., *McDermott* v. *Bear Film Co.* (1963) 219 Cal.App.2d 607, 608 [33 Cal.Rptr. 486].)

Other considerations, however, bear on this choice of law question. As a nonprofit corporation with no stockholders and no members, organized

---

[3]We regard the validity of corporate acts generally to constitute questions of law rather than of fact, but the answers to such questions may, of course, involve factual issues.

for educational purposes and supporting itself through charitable contributions, ACE may properly be considered a private charitable corporation. (See Gov. Code, § 12582.1; Karst, *The Efficiency of the Charitable Dollar: An Unfulfilled State Responsibility* (1960) 73 Harv.L.Rev. 433, 433, fn. 2; 4 Scott on Trusts (1967) § 348.1, p. 2770.) ■ Moreover, gifts to charitable corporations are deemed given in trust to carry out the objects of the corporation, and the assets of charitable corporations are deemed to be impressed with a charitable trust by virtue of the declaration of corporate purposes. (*Brown* v. *Memorial Nat. Home Foundation* (1958) 162 Cal.App.2d 513, 521 [329 P.2d 118, 75 A.L.R.2d 427]; *Lynch* v. *John M. Redfield Foundation* (1970) 9 Cal.App.3d 293, 298 [88 Cal.Rptr. 86, 51 A.L.R.3d 1284].) Accordingly, charitable corporations are generally governed by the same rules as those applicable to charitable trusts. (*Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 756-757 [40 Cal.Rptr. 244, 394 P.2d 932]; 4 Scott on Trusts (1967) § 348.1, p. 2778.)

Charitable trusts are usually governed by the laws of the state in which the trust is administered. (5 Scott on Trusts (1967) § 608, pp. 3945-3948.) This appears to be the rule in the District of Columbia, where ACE is incorporated. (See *Gilbert* v. *Beach* (D.D.C. 1941) 42 F.Supp. 168, affd. (D.C.Cir. 1943) 133 F.2d 50; Accord, Rest.2d Conf. of Laws, § 272, com. b.) ■ Factors to be considered in determining the place of administration are the domiciles of the trustees, the physical location of the assets constituting the *res* of the trust, and the place in which the business of the trust is carried on. (*Gilbert* v. *Beach, supra,* 42 F.Supp. at p. 171.) In cases dealing with noncharitable trusts, California courts have emphasized the location of the *res* as the major factor determining which law to apply. (E.g., *Hardy* v. *Hardy* (1958) 164 Cal.App.2d 77, 79-80 [330 P.2d 278].) ■ But we need not weigh these factors in the case at bench because the domiciles of all of ACE's directors, and the sole place of its business were in California where all of its assets were also located.

■ Under California law the directors of a charitable corporation are considered to be trustees in many respects. (*Holt* v. *College of Osteopathic Physicians & Surgeons, supra,* 61 Cal.2d at pp. 756-757; *Lynch* v. *John M. Redfield Foundation, supra,* 9 Cal.App.3d at p. 298.) This is particularly true with regard to their performance of their duties. (See *Trusts—Gifts to Charitable Corporations—Nature of Interest Created—Duties of Trustee* (1952) 26 So.Cal.L.Rev. 80, 83-85.) Furthermore, this state has a significant interest in scrutinizing the activities of charitable corporations

which carry on their business here and solicit contributions from among our residents.

■ Where a charity has been organized by California residents, is located in this state and has all of its assets and most of its activity here, we believe that actions taken in California concerning the administration of that charity should not escape the scrutiny of California law merely because the founders chose to incorporate elsewhere. Consequently, we hold that the law of California, to the extent it exists, is controlling.

This holding, however, is not of great consequence because the differences between California and the District of Columbia law in the relevant areas are not so significant as to dictate opposite results in this case.[4] Moreover, because the case presents issues which have not been definitively settled by the courts of California or of the District of Columbia, we shall have to seek guidance from the decisions of other jurisdictions as well. (See *Holt* v. *College of Osteopathic Physicians & Surgeons, supra,* 61 Cal.2d at p. 753; *McDermott* v. *Bear Film Co., supra,* 219 Cal.App.2d at p. 612; *Gilbert* v. *Beach, supra,* 42 F.Supp. at p. 170.)

## II. MERITS

### A. *Validity of the Executive Committee Meeting at the Bank and of the Actions Taken Thereat on May 15, 1970*

Many of the complex issues which are raised in this case must ultimately turn upon the answers to the questions of whether the ouster of Amyx as president and as a member of the executive committee and the election of Davies as a director at the executive committee meeting of May 15, 1970, at the bank were valid corporate acts. The trial court found variously as a matter of fact and concluded as a matter of law that they were not. Our examination of the elements of valid corporate action leads us to a contrary conclusion.

#### 1. *Procedural Requisites*

##### a. *Notice*

■ The jury found by special interrogatory that Amyx was given sufficient legal notice of a purported meeting of the executive committee

---

[4]See, for example, footnote 5 which, in applying District of Columbia law, suggests an alternate route to the same conclusion which we reach under California law.

held on May 15, 1970, and the court adopted this finding. This finding is correctly based upon another finding of the trial court that the custom and practice of the executive committee had been to meet informally without prior notice and wherever convenient to its members.

■ Meetings of boards of directors are valid where it has become customary for the board to convene such meetings without notice but with a quorum present. (2 Fletcher, Cyclopedia of Corporations (1969) § 409, p. 259; *Forrest City Box Co.* v. *Barney* (8th Cir. 1926) 14 F.2d 590, 592; *Gorrill* v. *Greenlees* (1919) 104 Kan. 693 [180 P. 798, 801-802].) More should not be required of an executive committee, especially where the membership of the executive committee and the board of directors is identical.

■ The jury's finding in the instant case does not specify which of the purported executive committee meetings on May 15 Amyx received valid notice of; but this ambiguity presents no difficulty because our analysis is based on the meeting of which he manifestly had the most notice—the meeting at the bank.

b. *Quorum*

Even if we regard Amyx's hasty retreats as successfully frustrating Cavnar and Todt's attempt to assemble a quorum, thus invalidating the attempted meetings of the executive committee in Amyx's office and on the street,[5] the meeting which occurred a few minutes later at the bank does not share this defect.

---

[5]Since we find a valid meeting at the bank, we do not reach the question of whether the meeting at Amyx's office was also valid. But it is instructive to consider how District of Columbia law views the matter.

In finding that a triable issue of fact existed as to whether a valid meeting had occurred at Amyx's office, the aforementioned earlier decision of another division of this court enunciated the general rule that " '[a] director cannot be trapped into attendance at a directors' meeting, against his will, by the directors going to his office, which was the office of the company, where he left the office in order to break up a quorum as soon as he realized that corporate action was to be taken and a meeting held.' " (*American Center for Education, Inc.* v. *Cavnar, supra,* 26 Cal.App.3d at p. 31.)

The statutes of the District of Columbia, however, provide that "[i]f a corporation has no members . . . the directors . . . may take any action herein permitted members." (D.C. Code, § 29-1016, subd. (d)) and that "[u]nless otherwise provided by the articles of incorporation or the bylaws, the members present at a duly organized meeting may continue to do business until adjournment, notwithstanding the withdrawal of enough members to leave less than a quorum." (D.C. Code, § 29-1017, subd. (b); accord, Corp. Code, § 307, subd. (a)(8); Marsh, Cal. Corporation Law and Practice (1977) § 8.19, pp. 437-438.)

Assuming that the general rule first quoted is also the law in the District of Columbia,

With valid notice of an executive committee meeting, Amyx went to the bank with the intention of preventing Cavnar and Todt from wresting control over the corporate funds from him. He probably anticipated that he would have to plead his case for such control to Benecke, the branch manager who virtually adjudicated the controversy that afternoon, and he certainly must have expected to encounter Cavnar and Todt at the bank. Furthermore, from the prior events of that afternoon, he knew that these adversaries of his were attempting to convene a corporate meeting.

Amyx, nevertheless, entered the bank and saw them standing with Benecke about 25 feet away. Rather than prevent a quorum from assembling, Amyx walked over to the group and injected himself into the conversation. Amyx began to explain his position to Benecke. A debate ensued among Cavnar, Todt and Amyx in which, according to Amyx's testimony, Benecke did not participate. The confrontation lasted for about 10 minutes.

■ While, as already noted, it has been held that a director cannot be trapped into attendance at a directors' meeting (*American Center for Education, Inc.* v. *Cavnar, supra*, 26 Cal.App.3d at p. 31; 2 Fletcher, Cyclopedia of Corporations (1969) § 422, p. 277; *Trendley* v. *Illinois Traction Co.* (1912) 241 Mo. 73 [145 S.W. 1, 6-7]), this rule does not apply where a director remains at and participates in the meeting. (2 Fletcher, Cyclopedia of Corporations (1969) § 422, p. 277; *Dillon* v. *Berg* (D.Del. 1971) 326 F.Supp. 1214, 1221, affd. (3d Cir. 1971) 453 F.2d 876; *Zachary* v. *Milin* (1940) 294 Mich. 622 [293 N.W. 770, 771]; *State* v. *Brast* (1925) 98 W.Va. 596 [127 S.E. 507, 509-510]; *Stobo* v. *Davis Provision Co.* (1894) 54 Ill.App. 440, 443-445; *Smith* v. *Paranga Mines, Ltd.* (1906) 2 Ch. 193, 197.) Again, we see no reason why the rule should be any different for meetings of an executive committee.

■ It follows that if the gathering at the bank was a meeting of the executive committee, Amyx's presence and participation waive any

whether that rule or the statutes would apply in any given case apparently depends, according to the latter statute, on whether the meeting was "duly organized" before the withdrawal.

No authority has been found which interprets these words, but two New York cases are helpful. In interpreting statutes which provide that a duly assembled meeting of a majority of directors constitutes a quorum, the New York courts have held that the words "duly assembled" require that each director either have received or waived notice. (*Republican Art Printery* v. *David* (1916) 173 App.Div. 726 [159 N.Y.S. 1010, 1014]; *Cirrincione* v. *Polizzi* (1961) 14 App.Div.2d 281 [220 N.Y.S.2d 741, 743].)

As has already been indicated, the court in the instant case adopted the jury's finding that Amyx had valid notice of an executive committee meeting on May 15, 1970.

objections which he otherwise might have had as to both notice and to his being counted for a quorum.

### c. *Procedural Informality*

The trial court found that Cavnar and Todt attempted to function as the executive committee while at the bank and stated that the evidence was clear that Amyx was present at that time. ■ Amyx's refusal to characterize the gathering as a meeting is, under the circumstances, irrelevant because neither want of unanimity nor lack of formality[6] will invalidate action taken where all of the members of an executive committee come together and consider a question. The law favors substance over form. (Civ. Code, § 3528.) Stated otherwise, under the circumstances of this case, informality does not vitiate.

■ In cases of close corporations where the directors are in frequent contact with each other, it is unnecessary to hold formal meetings in order to reach decisions.[7] (*Brainard* v. *De La Montanya* (1941) 18 Cal.2d 502, 511 [116 P.2d 66]; *In re Stylemaster Department Store* (1956) 7 Misc.2d 207 [154 N.Y.S.2d 58, 61]; 2 Fletcher, Cyclopedia of Corporations (1969) § 394.1, pp. 238-239.) ■ Moreover, it has also been held that the directors of small corporations may transact their business by conversa-

---

[6]It is not clear that the bank meeting actually lacked procedural formality. Both Todt and Benecke testified that the meeting was formally called to order in the bank lobby. Amyx admits participating in the debate but denies having heard a meeting called to order. Amyx also testified that he has a hearing defect; and his difficulty in hearing was manifested numerous times at trial.

Whether the court believed Todt on this point is not ascertainable from its finding that Cavnar and Todt attempted to act as the executive committee while at the bank. But we need not decide whether Amyx's testimony as to what he did not hear is substantial evidence that what he did not hear was not said, because we find validity even in the absence of formality.

[7]The newly adopted California Corporations Code contains provisions enacted for the purpose of recognizing that "shareholders of a closely held corporation often disregard the legal requirements and formalities of doing business in corporate form altogether and neglect to hold shareholders' and directors' meetings." (Legis. Committee com. to Corp. Code, § 158, Deering's Ann. Corp. Code (1977 ed.) pp. 32-33, 24 West's Ann. Corp. Code (1977 ed.) p. 34.) The new law provides that a corporation with 10 or less shareholders may elect to become a close corporation. (Corp. Code, § 158, subd. (a).)

Under the more general law which governs this case, a close corporation is simply one with few shareholders and a board of directors which personally conducts the corporation's business. (1 Fletcher, Cyclopedia of Corporations (1969) § 4, p. 32; 2 Fletcher, § 394.1, p. 239.)

ACE has no shareholders, its control is held in few hands, and its board members conducted its business. Accordingly, the legal principles and policies which obtain in cases involving close corporations are applicable here.

tion and without formal votes. (2 Fletcher, Cyclopedia of Corporations (1969) § 418, pp. 268-270; *In re Ostwald's Estate* (1959) 20 Misc.2d 1001 [189 N.Y.S.2d 472, 480].) The latter rule is especially applicable in corporations where informality has become customary. (19 Am.Jur.2d, Corporations, §§ 1121-1122, pp. 557-558; 2 Fletcher, Cyclopedia of Corporations (1969) § 418, pp. 268-270, § 394, pp. 236-238.) ▋ As already noted, the court in the instant case found that both ACE's executive committee and board of directors were accustomed to conducting their business informally.

Cavnar and Todt experienced no more difficulty than would reasonably be expected where two directors are required to obtain the attendance of a third at a meeting in order to remove him over his own objection. This necessarily is an arduous task, but it should not be impossible. Continuation of the corporate deadlock inherent in this situation is contrary to wise public policy.

A meeting which proceeds smoothly and without disruption is not a prerequisite to valid corporate action. Amyx voluntarily joined the group standing in the lobby of the bank. He knew of Cavnar and Todt's intention to call a meeting, and he was accustomed to conducting ACE's business informally with them. He remained in their company for 10 minutes during which time, as the court found, they attempted to act as the executive committee. He vigorously participated with them in a debate of the very issues which went to the bank to resolve. And when that debate was over, the majority had prevailed. We find no procedural defect in these events.

### d. *Location*

That the meeting was held in a bank lobby is not fatal to its validity. Valid corporate meetings have been held on a street corner (*Clark* v. *Oceano Beach Resort Co.* (1930) 106 Cal.App. 574, 577-581 [289 P. 946]), in a hallway (*Smith* v. *Paranga Mines, Ltd., supra,* 2 Ch. at p. 197), and in a laboratory (*Zachary* v. *Milin, supra,* 294 Mich. 622 [293 N.W. 770, 772].)

Moreover, as already stated, the trial court in the instant case found that "the custom and practice of the Executive·Committee of the Center was to meet informally *wherever* convenient to the Executive Committee members. . . ." (Italics added.)

e. *Presence of Benecke*

Nor was the presence of Benecke at the meeting objectionable. ■ The question of whether persons other than members of a board of directors may attend meetings of the board is a matter for the discretion of the board as a whole rather than any individual director. (*Burt* v. *Irvine Co.* (1964) 224 Cal.App.2d 50, 51 [36 Cal.Rptr. 270]; *Jacobson* v. *Moskowitz* (1970) 27 N.Y.2d 67, 72 [313 N.Y.S.2d 684, 688, 261 N.E.2d 613].)

2. *Their Validity Otherwise*

■ Having established that the May 15, 1970, meeting of ACE's executive committee at the bank met all procedural requisites, we now focus on the validity otherwise of the actions taken at that meeting: specifically, the removal of Amyx as president of ACE and as member of the executive committee and the election of Davies to the board of directors. The trial court found that Cavnar and Todt each "committed gross abuse of their authority and discretion as directors and officers of the Center [ACE]" in, among other things, "holding a purported board of directors meeting of the Center [ACE] on said date, May 15, 1970 . . ." The trial court further found that these acts, among others, while "of abusive authority and discretion" were neither "fraudulent or dishonest." Additionally, the trial court found that the $80,000 awarded in damages were suffered by ACE "as a direct and proximate result of the wrongful and negligent acts and omissions of UCB, Cavnar and Todt."

As we will discuss below, Cavnar's and Todt's actions during the May 15 meeting at the bank were within their grant of authority and discretion. Consequently, the election of Davies to the board and the removal of Amyx as an officer and member of the executive committee were valid.

a. *Power of the Executive Committee to Remove an Officer Without Cause*

■ As a general rule, the power to remove either a director or a corporate officer is incidental to the power to appoint or elect. Even without express authorization in the bylaws or corporate charter, the body or individual which can appoint an officer may remove him. (*Stott* v. *Stott Realty Co.* (1929) 246 Mich. 267 [224 N.W. 623, 624, 63 A.L.R. 774]; Annot., Power of Directors of Private Corporation to Remove Officers or

Fellow Directors (1929) 63 A.L.R. 776, 776-777; 19 Am.Jur.2d, Corporations, § 1105, p. 545.) ▮▮▮ In order to establish the validity of the executive committee's removal of Amyx as president of ACE, two questions must be answered: First, did the executive committee have the authority to remove an officer? Second, could the committee do so without establishing cause?

The bylaws of ACE vest the power to elect officers in the board of directors. The bylaws further provide that the officers of ACE "serve at the will of the board of directors." Thus, the power to remove was inferentially granted. Moreover, neither the articles of incorporation nor the bylaws of ACE suggest that these powers of appointment and removal are granted exclusively to the board of directors. We therefore conclude that they are included in the general delegation of power to the executive committee contained in the bylaws of ACE.[8]

This general grant of authority was consistent with the provisions of the California Corporations Code then in effect regarding the power of an executive committee. Section 822[9] stated that the board of directors may delegate to the executive committee any of the powers of the board in the management of the corporation except the power to declare dividends or adopt, amend, or repeal the bylaws of the corporation.

While it is evident that the members of ACE's executive committee were thus empowered generally to remove its officers, the question remains whether cause for their removal had to be first established. As we have previously noted, the bylaws of ACE provide that officers "serve at the will of the board of directors." This and similar language has been consistently held to obviate the necessity for establishing cause for the removal of a corporate officer by the board of directors. (*Whitley* v. *Pacific Industries, Inc.* (1967) 28 App.Div.2d 147 [283 N.Y.S.2d 525, 528]; *Douglass* v. *Merchants' Ins. Co.* (1890) 118 N.Y. 484 [23 N.E. 806, 807]; Annot., Power of Directors of Private Corporation to Remove Officers or Fellow Directors (1929) 63 A.L.R. 776, 780.) We conclude that the board of directors of ACE possessed the power to remove Amyx from his office

---

[8]ACE's bylaws state that the executive committee shall exercise the powers of the board of directors in the interim between meetings of the board with the general power to discharge the duties of the board. The resolution creating the executive committee of ACE likewise granted the committee the full powers of the board of directors in the interim between the meetings of the board with full power to discharge the duties of the board.

[9]Now superseded by Corporations Code section 311.

as president without cause. As we have already indicated, the bylaws of ACE delegated a general power to discharge the duties of the board of directors to the executive committee. We believe this general delegation of power included the board's power to remove an officer without cause. Thus, Cavnar and Todt, as the majority of the executive committee, acted within their authority in removing Amyx as president of ACE.

### b. *Power of the Executive Committee to Remove a Fellow Member Without Cause*

There are no provisions in either the bylaws or articles of incorporation of ACE regarding the removal of members of the executive committee. As we have noted earlier, however, the power to appoint carries with it the power to remove, and such power is granted in the bylaws of ACE to the board of directors. There is no reason to believe that this power regarding appointment and removal of members of the executive committee is not included in the general delegation of power to the executive committee contained in the bylaws of ACE.

Similarly, there is nothing in either the articles of incorporation or the bylaws of ACE that would lead us to believe that members of the executive committee cannot be removed without cause. Under both the articles of incorporation and the bylaws of ACE directors may be removed without cause. As previously indicated, officers of ACE are also subject to removal without cause. Absent any provision to the contrary, there is no reason to assume that the members of the executive committee are safeguarded from removal to a greater extent than either the officers or directors of the corporation.

We therefore conclude that Amyx was properly removed as a member of the executive committee at the May 15, 1970, meeting at the bank.

### c. *Power of the Executive Committee to Elect a Director*

We can see nothing negligent or wrongful in the election of Davies as a director of ACE by Cavnar and Todt. The bylaws of ACE state that the power to fill vacancies in the board of directors may be delegated to the executive committee. One of the duties of the board of directors under ACE's articles of incorporation is the "appointment" of directors. As already noted, the bylaws of ACE directly empower the executive committee to exercise the powers of the board of directors in the interim between board meetings. Consequently, the majority of ACE's executive

committee, namely Cavnar and Todt, was empowered to elect Davies as director.

B. *Validity of the May 25,. 1970, Board of Directors Meeting and the Actions Taken Thereat*

1. *Validity of the Meeting*

Since ACE's executive committee lacked the power to remove a director under the law of this case, Amyx was not removed as director on May 15. The jury was appropriately so instructed. Removing Amyx as director required a valid meeting of the board of directors. The jury was, however, erroneously instructed that they should regard as having been conclusively determined that the May 25 meeting of the board of directors was not called in compliance with ACE's bylaws.

This error flowed from a misinterpretation of the following statement made in the earlier opinion of this court in this case: "It therefore does not follow from the facts disclosed by the record that the May 25 board meeting was called in accordance with ACE's bylaws." (*American Center for Education, Inc.* v. *Cavnar, supra,* 26 Cal.App.3d at p. 35.)

The statement is both conditional and negative, and, standing alone, it does not support the trial court's interpretation. Taken in context, its meaning becomes clear. Having determined that there were triable issues of fact as to whether any of the May 15 executive committee meetings were valid and whether Davies had been validly elected a director on that date (*id.,* at pp. 30, 31, 34 fn. 7) another division of this court turned its attention to the question of whether the partial summary judgment before it could be upheld solely on the basis of the purported May 25 meeting of ACE's board of directors. (*Id.,* at pp. 33-35.) Since Amyx did not attend and since the bylaws required the presence of three directors to constitute a quorum, the validity of the actions taken on the latter date depended on the then unresolved question of the validity of Davies' election ten days before. It therefore did not follow from that record that the May 25 meeting was valid.

Since we have held that Davies was validly elected a director on May 15, it is now apparent that the May 25 meeting was a valid corporate act. We need not give the same exhaustive analysis to the question of the

validity of this meeting as we did to the meeting of the executive committee at the bank. Suffice it to say that Amyx testified that he received notice and that he did not attend. Uncontradicted evidence indicates that the meeting was attended by Cavnar, Todt, Davies, and an attorney. (*Id.,* at p. 29.) The trial court's finding that the meeting lacked a quorum is incorrect in light of Davies' attendance.[10]

### 2. *Validity of the Removal of Amyx as a Director*

It has been held that a board of directors has no inherent power to remove a fellow director since all directors are elected by the shareholders. (*Brunch* v. *National Guaranty Credit Corporation* (1922) 13 Del.Ch. 180 [116 A. 738, 741]; *Stott* v. *Stott Realty Co., supra,* 246 Mich. 267 [224 N.W. 623, 624].) In this case, however, the removal of Amyx as a director of ACE by his fellow directors was proper. Since ACE, a nonprofit corporation, had neither shareholders nor members, its directors held this power to remove directors normally reserved to shareholders. (See Corp. Code, § 9603; *Coon* v. *Freeman* (1970) 1 Cal.3d 542, 546 [83 Cal.Rptr. 217, 463 P.2d 441].)[11] And the bylaws of ACE make explicit the power of the board to appoint and remove directors.[12] As directors of such a corporation Cavnar, Todt and Davies were entitled to remove Amyx at any time. (Former Corp. Code, § 810.)[13]

---

[10]Even if Davies' election were not valid, the same conclusion would be reached under the rationale of *Gearing* v. *Kelley* (1961) 15 App.Div.2d 219 [222 N.Y.S.2d 474] affd. 11 N.Y.2d 201 [227 N.Y.S.2d 897, 182 N.E.2d 391]. In that case, two members of a board of directors met in the absence of a third whose presence was required to complete a quorum of three. They elected a fourth director to fill a vacancy on the board, and that election was upheld by the court because the third director had deliberately stayed away in breach of her duty to attend such meetings. The holding manifests a policy that the purpose of quorum requirements is to insure a right of consultation to minority interests and not to give to those minorities a veto power which can be used to paralyze the management of a corporation and frustrate the will of the majority of shareholders or directors. (See Corp. Code, § 307, subd. (a)(8); *Avien, Inc.* v. *Weiss* (1966) 50 Misc.2d 127 [269 N.Y.S.2d 836]; *In re Chelsea Exchange Corporation* (1932) 18 Del.Ch. 287 [159 A. 432]. But see *Tomlinson* v. *Loew's Incorporated* (1957) 36 Del.Ch. 516 [134 A.2d 518], affd. 37 Del.Ch. 8 [135 A.2d 136].)

[11]A similar provision is found in Washington, District of Columbia Code section No. 29-1016, subdivision (d): "If a corporation has no members or if the members have no right to vote, the directors shall have the sole voting power and shall have all of the authority and may take any action herein permitted members."

[12]As directors of ACE are elected by their fellow directors rather than by shareholders, allowing directors to be removed by their fellow directors is consistent with the general rule noted earlier that the power to remove is incidental to the power to appoint.

[13]Now superseded. See footnote 14.

There was no necessity to establish cause for the removal of Amyx as director. The bylaws of ACE specify that removal without cause is proper. Even without such a provision,. cause is apparently not required under California law for the removal of elected directors.[14] (See *Elevator Operators etc. Union* v. *Newman* (1947) 30 Cal.2d 799, 806 [186 P.2d 1].)

> *3. Our Conclusion that ACE is a Charitable Trust in No Way Limits the Foregoing Statement of the Power of Cavnar, Todt and Davies in May 1970 to Remove Amyx from all of His Offices with ACE*

Civil Code section 2282, subdivision 3, provides that a trustee may be removed from his trust "[b]y such means as may be prescribed by the declaration of trust" and judicial appointment of a trustee to a vacancy is authorized by Civil Code section 2287 only when "the declaration of trust does not provide a practical method of appointment." Generally, a trustee can be appointed or removed by any person so empowered by the terms of the trust (Rest.2d Trusts, §§ 107, 108), including a cotrustee (Bogert, Law of Trusts and Trustees (2d ed.) § 520, pp. 330-331). The articles of incorporation and the bylaws of ACE seem to us to be the functional equivalent of a declaration of trust and, consequently, powers granted by either or both of them are available for proper exercise.

In addition, trustees are required to act honestly, in good faith and within the limits of their discretion. (Bogert, Law of Trusts and Trustees (2d ed.) §§ 541, 560, pp. 446-449, 118-126; *Trusts—Gifts to Charitable Corporations—Nature of Interest Created—Duties of Trustee* (1952) 26 So.Cal.L.Rev. 80, 85.) Here, as already noted, the court found that the directors acted neither fraudulently nor dishonestly. Furthermore, a grant of absolute discretion, such as the one before us, eliminates the requirement that the fiduciary act as a reasonable and prudent person under the circumstances. (See *Coberly* v. *Superior Court* (1965) 231 Cal.App.2d 685, 689 [42 Cal.Rptr. 64]; Rest.2d Trusts, § 187, com. j, p. 408.) Viewed as trustees then, Cavnar, Todt and Davies acted properly in removing Amyx from all of his offices with ACE in May 1970.

---

[14]Removal of a director without cause is permitted under the current Corporations Code at the expiration of the director's term of office. (Corp. Code, § 303; Marsh, Cal. Corporation Law and Practice (1977) § 8.6, p. 413.) No such limitation as to the timing of removal existed in the former law.

### C. *The Judgment Must be Reversed Because Amyx Had No Standing to Sue in Behalf of ACE*

It is well settled that a corporation may sue upon authorization of its board of directors or upon the initiative of its president or managing officer. (See *Sealand Inv. Corp.* v. *Emprise, Inc.* (1961) 190 Cal.App.2d 305, 309-322 [12 Cal.Rptr. 153].) But when Amyx brought this action on behalf of ACE on June 24, 1970, he possessed no such authorization and occupied no such position. Where a managing officer has been validly removed, he has no authority to institute legal proceedings in the name of the corporation. (*Templeman* v. *Grant* (1924) 75 Colo. 519 [227 P. 555, 561].)

Similarly, a charitable trust may be enforced in an action brought by the Attorney General or an authorized relator in his name (*Brown* v. *Memorial Nat. Home Foundation, supra,* 162 Cal.App.2d 513, 538-539; *Selected Problems of California Charitable Corporation Administration: Standing to Sue and Directors' Ability to Change Purpose* (1966) 13 UCLA L.Rev. 1123, 1126), or by a trustee. (*Holt* v. *College of Osteopathic Physicians & Surgeons, supra,* 61 Cal.2d at pp. 755-757.) But other persons, even including donors, cannot maintain such actions. (*Brown* v. *Memorial Nat. Home Foundation, supra,* 162 Cal.App.2d at p. 538.) The single exception occurs where the charitable trust has been created for a very small class of beneficiaries, in which case the beneficiaries may sue to enforce the trust. (Rest.2d Trusts, § 391, com. c, pp. 279-280.) An organization such as ACE, whose purpose is to " 'safeguard and preserve this Nation's moral, spiritual, economic, political and social concepts' " (*American Center for Education, Inc.* v. *Cavnar, supra,* 26 Cal.App.3d at p. 28) will not in the absence of a strong showing be presumed to have been created for a small class of beneficiaries. There having been no such showing, the exception does not apply. Manifestly, Amyx could not have sued on behalf of ACE under any of these theories.

Under the statute applicable to this case, former Corporations Code section 811, a corporation is a necessary party to an action to remove a director. (See *DeGarmo* v. *Goldman* (1942) 19 Cal.2d 755, 760 [123 P.2d 1]; *Sattinger* v. *Golden State Glass Corp.* (1942) 53 Cal.App.2d 130, 133 [127 P.2d 653]. Both cases construe former Civ. Code, § 310 the predecessor of the just-mentioned former Corp. Code, § 811.) But former section 811 required that the action be brought by a shareholder. In the case of a corporation which has no shareholders and no members, it

would appear to be proper for such an action to be brought by a director, trustee, or managing officer. But no authority suggests that such an action may be brought by a person who, legally, has become a stranger to the corporation.

■ It is true that our courts possess the equitable power to remove directors independent of any statutory authorization. (*DeGarmo* v. *Goldman, supra,* 19 Cal.2d at pp. 760-761; *Brown* v. *North Ventura Road Dev. Co.* (1963) 216 Cal.App.2d 227, 232 [30 Cal.Rptr. 568].) But judicial exercise of this power may be successfully challenged when it occurs through an action *brought by a proper party* with unclean hands. (*DeGarmo* v. *Goldman, supra,* 19 Cal.2d at p. 766.) A fortiori, an exercise of this power is invalid where it takes place through an action *brought by an improper party.* (Cf. *Square 67 Dev. Corp.* v. *Red Oak State Bank* (Tex.Civ.App. 1977) 559 S.W.2d 136.)

■ Amyx has attempted to assert the rights of a charitable corporation in the same action in which he has asked the court to determine whether he holds a position which empowers him to do so. We have determined that he was validly removed from any such position and that he thereafter stood in the same legal relationship to ACE as does any other member of the public at large. Accordingly, the relief which has been granted to ACE cannot be upheld.

### DISPOSITION[15]

The judgment is reversed. The cross-appeal is dismissed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied May 22, 1978, and the petitions of the plaintiffs and appellants for a hearing by the Supreme Court was denied June 29, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petitions should be granted.

---

[15]We express no opinion regarding the conduct of the individual defendants herein with respect to any matters other than the removal of Amyx and the election of Davies. If, after reinterpretation of any such other conduct in light of the conclusions reached in this opinion, it appears that any of the individual defendants fell short of his fiduciary duties with respect to those matters, ample time remains for the Attorney General to bring an action on behalf of ACE within the 10 year statute of limitations. (See Gov. Code, § 12596.)