## FORREST CITY BOX CO. v. BARNEY.

(Circuit Court of Appeals, Eighth Circuit. August 5, 1926.)

No. 7225.

1. Corporations ⟨⟩298(5)—Oil lease, though authorized at informal meeting of only part of board of directors, held valid.

An oil and gas lease, executed by officers of a corporation under authority given at an informal meeting of resident directors, acting in accordance with long-established custom, two of the directors being nonresidents and seldom visiting the state, *held* valid and binding on the corporation.

2. Corporations ⟨⟩425(5)—Corporation held estopped to deny validity of oil lease executed in accordance with its usual manner of doing business.

Where it had long been the custom for the local directors to manage the affairs of a corporation, two of the directors being nonresidents and seldom attending the meetings, the corporation *held* estopped to deny the validity of an oil and gas lease executed under authority given at a meeting of the resident directors, and for which the lessee in good faith paid a valuable consideration.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

In Bankruptcy. In the matter of the Harry Morris Guaranteed Gusher Syndicate No. 3 and others, bankrupt. From an order dismissing its intervening petition, the Forrest City Box Company appeals. Affirmed.

W. T. Saye and Mahony, Yocum & Saye, all of El Dorado, Ark., for appellant.

A. D. Keeney and Will Steel, both of Texarkana, Ark., for appellee.

Before SANBORN, Circuit Judge, and WOODROUGH and SCOTT, District Judges.

SCOTT, District Judge. This is an appeal from an order and judgment of the Unit-

ed States District Court for the Western District of Arkansas, affirming an order of a referee in bankruptcy of that district dismissing an intervening petition by the appellant, Forrest City Box Company, filed and prosecuted in the matter of Harry Morris Guaranteed Gusher Syndicate No. 3, Harry N. Morris, trustee, and Harry N. Morris, being consolidated bankruptcy proceedings. The appellant, intervener in the bankruptcy proceeding, filed its petition in the bankruptcy court, alleging "that on the 29th day of November, 1922, for an alleged consideration of $10, J. S. Schlosser, vice president, and E. J. Seaton, secretary treasurer, respectively, of the Forrest City Box Company, undertook to convey to Otto L. Morris by way of lease for five years the oil and mineral rights in the northwest quarter of the southwest quarter of section 31, township 15 south, range 16 west; said lease was by Otto L. Morris on the 29th day of January, 1923, assigned to Harry N. Morris, trustee, and such rights as were obtained by the above parties under said lease were transferred and are now held by H. M. Barney as trustee in bankruptcy of the Harry Morris Guaranteed Gusher Syndicate No. 3, which last-named estate is being administered in this court. Interveners allege and charge that the alleged conveyance by the Forrest City Box Company was void and of no effect, for the reason that the said J. H. Schlosser, vice president, and E. J. Seaton, secretary treasurer, had no right or authority to execute the same, and that their efforts to do so were without avail and passed no title to the alleged purchaser."

The foregoing intervening petition was amended by alleging that "the purported lease * * * is void for the further reason that the execution of said instrument was and is beyond the corporate powers of the Forrest City Box Company, and, even if said leases were duly executed and authorized by the board of directors of said company, the action of said board was and is ultra vires and void."

Upon the hearing before the referee, the referee found:

"That November 29, 1922, the Forrest City Box Company, acting through J. H. Schlosser, as vice president, and E. J. Seaton as secretary, and who were duly authorized to do so by the corporation, executed and delivered in escrow an oil and gas lease on the lands above described, conveying same to Otto L. Morris, for the sum of $8,000 cash, $6,000 out of the oil which might be produced, and one-eighth of all oil produced by said lease. The lease was delivered in escrow, pending the approval of the title by Powell & Smead, attorneys for Otto L. Morris, and the payment of the balance of the $8,000 cash. In due course the title was approved and the $8,000 cash paid over to the authorized agents of the Forrest City Box Company. On December 14, 1922, said lease was duly recorded, together with the following certified copies of resolution and extract from the articles of incorporation of the Forrest City Box Company, to wit:

"'The board of directors of the Forrest City Box Company of Forrest City, Ark., hereby duly authorize and direct the vice president of the company to negotiate and execute the sale of the oil and mineral rights to the following parcels of lands, to wit: The northwest quarter of the southwest quarter, section 31, township 15 south, range 16 west, containing 40 acres, and situated in the county of Ouachita, Ark., to Otto L. Morris, for the consideration named in the agreement of sale.'

"'The principal duties of the president shall be to preside at all meetings of the directors, to have a general supervision of all affairs of the corporation, to sign all certificates of capital stock, to sign in his official capacity all deeds, mortgages, leases and other conveyances of real estate, and all instruments affecting the title of real property, and to perform such other duties as may be enjoined upon him by the board of directors, or by resolution or by law.

"'The principal duties of the vice president shall be to discharge the duties of the president in case of the absence or disability from any cause whatsoever of the latter.

"'The principal duties of the secretary shall be to countersign all deeds, mortgages, leases, or other conveyances of real estate, and all instruments affecting the title of real property, affix the seal of the corporation thereto, and to such other papers as shall be required or directed to be sealed, et cetera.'

"The above were duly certified to by E. J. Seaton as secretary of said corporation, and the seal of the corporation affixed to the oil and gas lease and also to the certificates.

"On December 31, 1924, the Harry Morris Guaranteed Gusher Syndicate No. 3 was adjudicated bankrupt by the District Court of the United States for the Western District of Arkansas, and H. M. Barney was duly elected trustee. Among the assets belonging to said estate was this lease.

"On March 31, 1924, the Forrest City Box Company filed their intervening petition asking that said lease be canceled because the vice president and secretary had no authority to

execute the same and because the execution of same was ultra vires.

"From the evidence it appears that H. A. Sellen, the president, and one of the directors was a nonresident of Arkansas, and that E. J. Seaton, the secretary and treasurer, was the manager of the business. The Forrest City Box Company was incorporated in 1907, and E. J. Seaton was one of the stockholders and director, and also secretary and treasurer from that date up to August, 1923, when he was removed by the majority stockholders, principally H. A. Sellen, the president. Up to that time the stockholders' and directors' meetings were very irregularly held, and most of the meetings shown in the minutes were the annual meetings held for the purpose of re-electing the officers, and to increase the capital stock. At least one important meeting was held ostensibly at the suggestion of H. A. Sellen for the purpose of borrowing a large sum of money, and the records do not show the minutes of such a meeting. One meeting was held at which all were present on the street corner in El Dorado, and all the old directors and officers were elected. All the business was handled under the general authority granted in the charter and the minutes, and, so far as the outside world knew and Otto L. Morris in particular, everything was being done in a regular way. The certificates showing the authority to execute the lease in question were duly recorded, and the corporation is now bound by that authority."

It is conceded in argument, and such concession clearly warranted by the record that Otto L. Morris negotiated and concluded his purchase of the lease in question in good faith, and paid over $8,000, to the proper officers of the appellant corporation, and otherwise negotiated as stipulated in the lease.

On the review of the order of the referee before the District Court, that court found the findings of the referee fully sustained by the evidence and affirmed the order.

Appellant presents two questions on this appeal:

(1) Did Schlosser and Seaton have and exercise actual authority in the execution of the lease? And, if not:

(2) Is the corporation estopped by reason of their apparent authority to transact the business in question, and to certify over their own hands and the seal of the corporation corporate acts performed?

[1] The appellant claims that Schlosser, vice president, and Seaton, secretary treasurer and manager, had no authority to negotiate the sale of the oil and gas lease, for that no regular meeting of the board of directors was held at which such officers were authorized to act in the premises, and that, notwithstanding their certificate over the seal of the corporation to that effect, the corporation is not bound. The record without dispute shows: That H. A. Sellen, president of the corporation and holder of 1,000 shares of its stock, was a resident of Chicago, Ill. That J. E. Morgan, holder of 2,100 shares of stock in the corporation, was a resident of Oshkosh, Wis. That both Sellen and Morgan were directors in the company. That the other three of the five directors were J. H. Schlosser and E. J. Seaton of Forrest City, Ark., and W. C. Girard of Calion, Ark. That the corporation had been in existence actively for many years, and that for fifteen years prior to the transaction in question the Arkansas directors had with practical exclusion been the active factors in its operation. Sellen and Morgan were seldom in Arkansas, and rarely attended meetings of the board of directors. The directors' meetings for many years had been quite informal, and held almost invariably by the Arkansas directors. Sellen and Morgan had, however, been in Arkansas some months before the transaction with Morris, and a conversation upon a river boat took place between all of the directors who were there present. The conversation was directed to a possible market for oil and gas leases upon the company's land, owing to oil development in that section of the state. Respecting this conversation, Girard testifies: "Well, they remarked that—both Mr. Morgan and Mr. Sellen—Mr. Sellen particular was doing most of the talking, we were on the boat, and he says, 'You boys are there on ground, and naturally we will have to leave it to your judgment there to go ahead and take care of the business here, as we have done in the past.'" This statement was in response to a suggestion indicating that quick action might be necessary. No notice was given either Sellen or Morgan of the holding of a directors' meeting to authorize the lease, and the directors' meeting was informally held by the three Arkansas directors. But this action was wholly in accord with past custom, and both Sellen and Morgan were fully cognizant of that custom. The District Court found that the findings and conclusions of the referee were fully supported by the evidence. We have examined the record with care, and arrive at the same conclusion.

[2] However, if we were to assume that under the whole record the actual authority of Schlosser and Seaton to execute the lease in question was in doubt, still we think it beyond question that the corporation is estopped to

question their action, by reason of its habit of holding out the Arkansas officers and directors to transact all corporate business, and by reason of the provisions of the articles of incorporation relative to the powers of its officers, and the certificate executed by such officers over the seal of the corporation confirming the authority to lease, and that the board of directors at a regular meeting had acted on the subject.

From what we have said, it follows that the order and judgment of the District Court should be and is affirmed.