DECISION
This matter was heard by the court sitting without a jury on October 19 and 20, 1998. The Church of God in Christ Jesus, Inc. (plaintiff) filed the instant action against the current Pastor Morris Griffin and General Mother Deborah Griffin (defendants) asking the court for relief on seven counts sounding in conversion, breach of trust, eviction, accounting, unjust enrichment, and declaratory judgment. Jurisdiction is pursuant to G.L. 1956 § § § 8-2-13, 8-2-14, and 9-30-1.
 Facts
The facts are as they follow. In 1977, Eugene Thomas and Arthur Lawrence, along with others, incorporated the Church of God in Christ Jesus, Inc. (Church). Soon thereafter, the Church held a special meeting of incorporators wherein the group elected the Board of Trustees, adopted local by-laws, and agreed upon a depository bank. In the ensuing years, both Thomas and Lawrence played active roles in the Church, as Director and Trustee, respectively. In 1981, the Church purchased a building at its present location on 909 Eddy Street in Providence.
Sometime in the mid-1980's, Thomas left the Church and became affiliated with a different denomination. Between the time of his departure and 1995, he visited the Church but one time. The court finds that likewise, Mr. Lawrence stopped attending Church services in the early-1980's. He made no visits to the Church between his departure and 1995.
In the meantime, long-time member Morris Griffin officially joined the Church in 1990. When Griffin joined, Pastor Lila Singleteary was very ill, the Church building was in serious disrepair, and membership had dwindled to three regular members. As a new member, Mr. Griffin contributed his time and labor to the Church, leading an effort to repair the building. In 1992, he was ordained a pastor by Bishop Amos, the National Church's top official, during a ceremony in North Carolina. The Bishop specifically directed Griffin to repair the Church's physical plant and undertake other tasks necessary to revive the dying Church.
Even after admitting he did not want to be a pastor, Griffin strove to fulfill his duties. He held an open general meeting of Church members to elect corporate officers. He paid the forfeiture fee to the Secretary of State and filed back-certificates to reinstate the corporate charter. Additionally, he consolidated Church bank accounts and added a second signature to the account, thereby requiring the signatures of two Church officials to draw on the account. Finally, after inquiring as to the combination, the Pastor broke into an office safe in search of past Church records. The court found Griffin a most credible witness.
Perhaps as a result of his efforts, the Church flourished, with membership swelling to 35 regular members and a Sunday school for children. Just when the Church was experiencing this rebirth, Lawrence became suspicious of Griffin's actions and investigated the same at City Hall and the Secretary of State's office. After seeking legal advice, Thomas and Lawrence brought this suit on behalf of the Church and consulted with and elected a new Board. The new "Board" acted quickly, agreeing that Pastor Griffin should be removed from the Church and consulted with an attorney regarding their rights.
In a nonjury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citingWalton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . .". Id See also Rodriques v. Santos,466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact).
 Estoppel
The plaintiff argues that the Church property remains with the original Church officers, trustees, and members as they were never validly replaced. The defendants counter that the Church is estopped from contesting the authority of Griffin because of the corporation's long acquiescence in Griffin's conduct.
According to the local by-laws, "all officers shall be elected by the Board of Trustees" and shall hold office until their successors are elected and qualified. Furthermore, "all officers, agents and employees of the Corporation shall be subject to removal at any time by the affirmative vote of a majority of the Board of Trustees." The plaintiff argues that Thomas and Lawrence were never removed pursuant to the by-laws. Consequently, each now claims his seat on the Board. The corporation further complains that Griffin acted improperly by taking control of the Church business and property.
The resolution of this issue will be guided by the principles of de facto directors and officers. "To be a corporate officer or director de facto one must be in possession of the office, and be exercising the duties thereof under color or appearance of right, while not being an officer or director de jure by reason of ineligibility or lack of qualification." 19 C.J.S. Corporations
§ 459. Ineligibility can result where, as here, there is an irregularity in the election. Ordinarily, "the acts of de facto officers or directors, if otherwise legal, are as to third persons, valid and binding on the corporation as to the same extent as those of de jure officers or directors." Id. at § 458. However, this is not necessarily true as between rival boards of directors or sets of officers or in contests between the corporation on the one hand and the board on the other, "unless the latter are precluded by acquiescence from disputingthe authority of the officers in question." Id. (emphasis added).
Moreover, "the right to question the dealings of officers or directors with the corporation property may be lost by ratification or acquiescence, and such right to question the dealings of officers or directors with the corporation property may be lost by estoppel or laches." 19 C.J.S. Corporations § 505 (1990).
While it is true that the defendants were not elected officers in accordance with the by-laws, each was in actual possession of the office and acted as such under color of right. Hence, Morris and Deborah are clearly de facto officers and directors. See Drob v. National Memorial Park, Inc., 41 A.2d 589, 598 (Del.Ch. 1945); Prickett v. American Steel and Pump Corp.,253 A.2d 86, 88 (Del.Ch. 1969). Ordinarily, their de facto status would not preclude the corporation from contesting the validity of their actions. However, where the corporation has acquiesced in the de facto director's authority, the corporation may be estopped to deny it.[1]
The facts in the instant case support no conclusion other than that the corporation did so acquiesce. See Essex v. Lukas,159 A.2d 612, 613 (R.I. 1960) (In a property boundary dispute, acquiescence is a question of fact to be determined on a case-by-case basis). Directors Thomas and Lawrence, neither of whom were credible, apparently abandoned the Church for almost a decade. In their absence, the corporation ceased filing biennial reports with the Secretary of State. Neither the Board of Directors nor the Board of Trustees held meetings to address this problem, or even to address the day-to-day business of the Church. Similarly, the Church facilities and Church membership reflected the apparent apathy of the corporation toward its continued existence.
When Griffin worked to revive the Church, his efforts were not acknowledged by former Board members, Thomas and Lawrence. For three years, he served as Pastor and Director, holding an open general meting, reinstating the corporate charter, repairing the Church building and setting the Church's finances. The corporation, through Church members or original Board members, never questioned his behavior. This conduct clearly evidences the corporation's acquiescence in Griffin's actions. Accordingly, the corporation is now precluded from disputing Griffin's authority.
 Waiver
The plaintiff next argues that all meetings called by Pastor Griffin were illegal and invalid because they violated the notice requirements of local Church by-laws. The plaintiff complains that the essential parties were never notified, and notice was not written. Thus, the plaintiff concludes any and all actions taken at these "unadvertised" meetings are void. The Pastor agrees that, under his leadership, Board meetings and annual meetings were not advertised according to the local by-laws, but argues that the Church members waived their right to complain by acquiescing in this practice.
Under the Rhode Island Nonprofit Corporation Act "`[b]ylaws' means the code or codes of rules adopted for the regulation or management of the affairs of the corporation" and may contain any such rules "as long as they are not inconsistent with law or the articles of incorporation." G.L. 1956 § § 7-6-2, 7-6-12.
The local by-laws of the Church of God in Christ Jesus provide for notice of the time and place of an annual meeting to be given
 "not less than five (5) nor more than thirty (30) days prior to the date of the meeting, by mailing, postage prepaid, a copy of said notice to each member of the corporation, at his post office address as it appears on the records of the Secretary."
Similarly, notice of time and place of the Board of Trustees meeting
 "shall be given, not less than three (3) nor more than ten (10) days prior to the day of such meeting, by personal services or by mailing, postage prepaid, a copy thereof to each trustee at his post office address as it appears on the records of the Secretary."
Although they are intended to aid in managing the affairs of a corporation, "by-laws may be waived by custom and usage, as where there has been a continued disregard of the by-laws by the parties for whose benefit they we reenacted." 18C. J. S.Corporations § 120 (1990). Clearly, such is the case here. When the newly ordained Pastor Griffin returned from North Carolina, he scheduled an open meeting to elect corporate officers, and no one complained. He notified members at Church services several weeks in advance of the meeting, and no one objected. When he continued to conduct the Church's affairs in accordance with national by-laws for the next three years, no one protested. Thus, by continuing to ignore the local by-laws, the trustees and members waived their right to complain of the loss of their benefits therefrom.[2] See e.g. Dixie Glass v. Pollak,341 S.W.2d 530 (Tex. Civ. App. 1960), aff'd 347 S.W.2d 596 (Tex. 1961) (waiver of the by-law limiting all employment contracts to one year where all the company's directors, officers and owners approved awarding the plaintiff a five-year contract). Accordingly, the corporation, by long-established custom, waived the notice requirement of its by-laws.
For the above reasons, after considering all the evidence before it, this Court declares that the officers and trustees designated in the filing dated June 25, 1995, and filed with the Secretary of State on August 8, 1995, are the proper officers and trustees, and the Church is estopped from disputing Griffin's authority in that capacity. Accordingly, the Church's claims for conversion, unjust enrichment, breach of trust, and misrepresentation, as well as its prayers for eviction and accounting are denied.
Counsel shall submit the appropriate judgment for entry.
[1] In Schwab v. Frisco Min. and Mill. Co., 60 P. 940, 942, (Utah 1900), the court held that the validity of the acts of a board of directors de facto and their authority as such may be called in question by any stockholder who had not acquiescedtherein. (emphasis added).
[2] In Forrest City Box Co. v. Barney, two of the five directors of an Arkansas corporation were non-residents of the state. 14 F.2d 590, 592 (Ct. App. 8th Cir. 1926). Both directors were rarely in the state and seldomly attended Board meetings. Indeed, "for fifteen years prior to the transactions in question the Arkansas directors had with practical exclusion been active factors." Neither non-resident director was given notice of a meeting in which a lease was authorized. Notwithstanding this, the Court found the lease valid and binding on the corporation, reasoning the meeting was in accord with long-established custom.Id.